## MARIA ANTONIA PINA, BY WILLIAM FITCH, HER GUARDIAN *v.* JOHN PECK *et als.*

CONSTRUCTION OF STATUTE.—The statute which provides a way in which the father of an illegitimate child may make the child his heir, being in derogation of the common law, must be strictly construed.

ACKNOWLEDGMENT OF PATERNITY OF ILLEGITIMATE CHILD.—An acknowledgment in writing, signed by the father of an illegitimate child, to be sufficient to make such child his heir, must be complete in itself, so that the Court will be able to say from an inspection of it, without the aid of parol testimony, that the person who signed it acknowledged himself to be the father of the illegitimate child therein named. It must state that the child is illegitimate.

IDEM.—A written acknowledgment of the paternity of an illegitimate child, which is not executed for the purpose of making such child the heir of the father, will not make the child such heir, though it contains all the matters required by the statute for such acknowledgment.

APPEAL from the District Court, Seventh Judicial District, Sonoma County.

José German Pina, on the fourteenth of October, 1843, received a grant of land from the Mexican Government, in what now constitutes the territory of Sonoma County. He died unmarried, leaving several brothers and sisters, Antonio Pina, the father of plaintiff, among the number. Afterwards and in 1853 Antonio Pina died, leaving the will mentioned in the opinion of the Court. Plaintiff brought this action to recover possession of the land. Defendants claimed title derived from the surviving brothers and sisters. Plaintiff had judgment in the Court below, and defendants appealed.

The other facts are stated in the opinion of the Court.

*L. A. Norton, Wm. Ross,* and *Wm. H. Patterson,* for Appel-

lants. At common law an illegitimate child could not inherit. (2 Black. Com. 198.) A statute allowing an illegitimate child to inherit, being in derogation of the common law, must be strictly construed. (*Crayton* v. *Munger*, 11 Texas; and *People* v. *Hadden*, 3 Denio.) The Statute of Descents provides: 1st. There should be a writing signed; 2d. There must be a competent witness to that writing; 3d. That writing must acknowledge the person executing it to be *the father* of an illegitimate child. We contend : 1st. That the written acknowledgment must be executed for the *express purpose* of acknowledging the person signing to be the father; 2d. And the writing must be sufficiently complete and definite to furnish the designation of the *person* acknowledged, and to manifest the intent to acknowledge to the exclusion of any other reasonable interpretation. The instrument which plaintiff claims as an acknowledgment was a will, and was not made for the express purpose of making plaintiff his heir at law. Without evidence *dehors* the instrument we cannot determine that plaintiff was an illegitimate child. (*Shearman* v. *Angel*, 1 Bailey Ch. 351; *Edmonson* v. *Dyson*, 7 Georgia; and *Drake* v. *Drake*, 4 Deveraux, 110.)

*George Pearce*, for Respondent. If the Legislature intended that an acknowledgment of the *illegitimacy* should be made, why did they not place the matter beyond doubt by adding after the words " who shall have acknowledged himself to be the father of such child," the additional words " and such illegitimacy." The maxim here applies, *expressio unius est exclusa alterius.* The very Act under which the respondent takes is entitled " An Act to regulate descents," etc. To adopt the construction contended for by appellants is to declare that the Legislature did not enact a law in 1850 that *does regulate descents*. If the Legislature, in presuming to pass an Act to regulate descents, acted in derogation of the common law, then the rigidly strict construction claimed by appellants may be correct, but we submit that the application of such a rule cannot be extended to bare *words* used in a

*statute* which in itself is not in derogation of the common law. Appellant's counsel contends that the writing in the case at bar was intended "*as a last will and testament,*" and seem to draw the conclusion that therefore the ancestor had no intention to acknowledge his paternity of the respondent. This would be a rational conclusion, if we could believe from the instrument itself that the ancestor did not intend to provide for his daughter, the respondent. The writing and acknowledgment was made in view of death at an early hour, and was the most solemn that men can make.

By the Court, RHODES, J.:

It is provided in the second section of the statute to regulate descents and distributions that "every illegitimate child shall be considered as the heir of the person who shall, in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child," etc. This clause of the section was under consideration in the *Estate of Samuel Sandford*, 4 Cal. 12. The question there was, whether a contract made between Sandford and two other persons for the nursing of the child, in which this language occurs: "We bind ourselves for the term of one year to nurse a female child (Nina) of Samuel Sandford"—amounted to such an acknowledgment of paternity by Sandford as is contemplated by the statute, and it was held that it did not. Mr. Justice Heydenfeldt, in concluding the opinion of the Court, says: "Nor do we, in deciding the case upon this ground, intend to intimate that any writing containing the evidence required would be sufficient to create an heir, under the statute, where it appears upon the face of the instrument that there existed no such object or intention at the time it was made. That question is not necessary to be considered here, and is therefore left for some future adjudication." The case at bar presents that question.

The plaintiff claims that Antonio Pina acknowledged him-

46

self to be her father, and in proof of it she produces his will, written in the Spanish language, in which, after nominating his executor and giving him certain directions as to property coming to him, says (according to the plaintiff's translation) : "At the same time I charge you that of my part, the third, I leave to my daughter Ma. Antonia Pina, and all above to distribute among my brothers." No other clause of the will bears upon the question. The will was attested by two witnesses. The Court instructed the jury : " That the written acknowledgment contained in Exhibit B B [the will] is sufficient to entitle an illegitimate child to inherit, if it was fairly made and signed by the ancestor." The plaintiff claims by descent, and not by devise, and says that the clause of the will above recited relates to certain personal estate, and not to the real estate, which is the subject of controversy.

Admitting that the will was properly executed in the presence of two competent witnesses, and was duly admitted to probate, is it sufficient to constitute such an acknowledgment of paternity as is required by the statute ?

It is contended by the defendants that this provision of the statute is in derogation of the common law and must therefore be strictly construed. That doctrine was announced and applied by the Court in the *Estate of Samuel Sandford*, and we are of opinion that the ruling is correct beyond a doubt. As a consequence resulting from the operation of this rule, the acknowledgment must conform to the statute, and be complete in itself—that is to say, it must not require the aid of extrinsic evidence. When the parties are identified, and the instrument in writing is produced and proven, the Court must be able to say from the instrument that the person who signed it thereby acknowledged himself to be the father of the illegitimate child therein named. The testator calls the plaintiff his " daughter," and as there are no words of qualification, and resort cannot be had to extrinsic evidence to help out the acknowledgment, the inevitable meaning is, his *legitimate* daughter. But the object of an acknowledgment under this statute is to change the status of an illegitimate child, and to

bring-him or her into new relations with the putative father; and, in order that this intention may appear on, or necessarily arise from, the face of the acknowledgment, the child must be declared to be illegitimate, or words must be used that necessarily imply illegitimacy. Otherwise the intention to change the relation subsisting between the father and child would not appear from the instrument itself. Merely coupling the appellation " my daughter " with the plaintiff's name does not raise the most shadowy presumption that his intention was to elevate an illegitimate to the condition of his heir.

If the acknowledgment may be aided by extrinsic evidence in one respect, why may it not in others, and why may not the person claiming under the alleged acknowledgment, prove by parol evidence that it was signed in the presence of a competent witness, though it was not attested by him? But the oral evidence of the plaintiff goes further than this—by proving her illegitimacy she contradicts the instrument under which she claims. By claiming under it, she is bound by its recitals; and there being no latent ambiguity in the term " my daughter," it is not subject to alteration by parol evidence.

The question suggested in the *Estate of Samuel Sandford* is more important than the one just discussed. Can an instrument that was plainly and unmistakably executed for another purpose, though it contains all the matters required by the statute for an acknowledgment, and was executed in the prescribed manner, be regarded as a statutory acknowledgment of paternity of an illegitimate child? We are clearly of the opinion that the answer must be in the negative.

The statute is very loosely drawn, and, when construed with the utmost strictness, action taken under it is attended with much risk to those dealing with the legitimate heirs of the father, because the statute has not required publicity to be given to the acknowledgment by record or otherwise; but it is impossible to conceive that the Legislature intended to go to the absurd length of attributing that effect to documents made by the father in the usual course of business, in which

the child's name and paternity might appear in some connection with the subject matter of the document. For all the purposes of justice it would be as safe to leave the matter to be proven by oral declarations, as to be established by incidental mention in written instruments. The object of the statute was not to enable the illegitimate child to become the heir of his father, when it was satisfactorily shown who was his father; but it was to empower the father to constitute his illegitimate child his heir, if he desired so to do. It authorized him to accomplish this purpose by proceeding in a prescribed mode. He must sign a writing, in the presence of a competent witness, acknowledging himself to be the father of the illegitimate child. Much is due to the word " acknowledged " in the connection in which it is used. It implies the formal doing of an act for the purpose of availing himself of the beneficial provisions of the statute. That term may not be indispensable, but doubtless other words may be employed, provided the whole instrument shows it to be an acknowledgment made for the purpose of elevating the illegitimate to the position of an heir of his father. This purpose must clearly appear from the instrument, and the Court is not at liberty to extract a statement or recital from an instrument executed for another purpose, and say that as the maker of the instrument admits that he is the father of the child, therefore he shall be held to have intended to make the child his heir.

The statutes present many instances in which certain specified results may be attained or objects accomplished by the performance of certain acts prescribed by the statute, but in such cases it is generally if not universally true that it must appear that the act was done, not only in conformity with the statute, but for the purpose of securing the result authorized or required by the statute. A declaration of homestead, a possessory claim to public land, a declaration as a sole trader, an acknowledgment of a deed, are familiar examples. Suppose a person, entitled to make a declaration of homestead, should execute, acknowledge and file for record a mortgage in which was recited all the matters necessary to be stated in the '

declaration; would any one take the risk of offering the mortgage in evidence to prove a declaration of homestead? There is no greater difficulty in converting a mortgage into a declaration of homestead than in making a statutory acknowledgment of paternity of an illegitimate child out of a will. The statement of all the facts in the one case does not tend to show that the mortgagor made a declaration of homestead, for though able, he may have always been unwilling to make the claim; nor does the mention of the plaintiff by the testator, as his daughter, tend to show that he acknowledged her as such, in order to make her his heir.

There are many considerations growing out of the nature of a will—it being always subject to alteration and revocation up to the death of the testator, it not taking effect until that event happens, and there being nothing of the character of a delivery in respect to wills, as is usually the case with all private writings affecting others than their makers—that have a bearing on the question of the competency of a will to prove the main fact in issue; but we need not pause to notice them.

Judgment reversed and the cause remanded for a new trial.

SHAFTER, J., concurring specially, in which concurrence Mr. Justice SAWYER joined:

I concur in the judgment.