# Abney *et al. v.* DeLoach, Admr., *et al.*

*Bill in Equity by alleged Heirs and Distributees against Administrator for Settlement.*

84 393
98 346
84 393
110 550

1. *Adoption of child.*—The statutory provisions regulating the adoption of children (Code of 1886, §§ 2743–2745), are *ministerial* in their procedure; not judicial.

2. *Adoption of child.*—The statutory provisions regulating the adoption of children, (Code of 1886, §§ 2743–2745), though in derogation of the common law, are not to be construed so strictly as to defeat the legislative intent. In the articles of adoption construed in this case, it was *held;*

(a). The certificate of acknowledgment, no form being prescribed, may be in the form prescribed for conveyances, or in substantial conformity thereto.

[Abney et al. v. DeLoach, Adm'r, et al.]

(*b*). The recital in the declaration, that the declarants were of "said county and State" refers to the county and State mentioned in its margin, or caption, and shows the residence of the declarants.

(*c*). The acknowledgment reciting that the declarants "*being informed* of the contents of the declaration" acknowledged that "*they executed* the same voluntarily on the day the same bears date," this substantially complies with the Code form in which the signer "*acknowledges*" that "*being informed*," he executed, &c. In the one case the officer certifies that the signer is informed. In the other, the signer acknowledges he is informed, &c.

(*d*). The declaration and certificate of acknowledgment thereto, being dated on the same day, it sufficiently appears that the former was acknowledged on the day of its date.

(*e*). The declaration being filed in the office of the Probate Judge, and recorded in the book of wills and deeds, the failure of the judge to enter it "on the minutes of his court," being the neglect simply of a ministerial duty, does not invalidate the act of adoption.

(*f*). The validity of the declaration of adoption, as the act of the husband, is not affected by the concurring act and signature of the wife.

(*g*). The failure to state the age of the child in the declaration does not invalidate the act of adoption, the identification of the child in other respects being full and sufficient.

APPEAL from Monroe Chancery Court.

Heard before Hon. THOMAS W. COLEMAN.

The bill was filed by a nephew and two nieces of John N. Sanders, deceased, claiming that they are entitled to the whole of the real estate of the deceased, subject to the widow's right of dower, and to one half of the personal property of the deceased, in absolute right as heirs and distributees.

The bill shows that John N. Sanders died intestate in March, 1887, leaving a widow, Rebecca, surviving him, and no child or children, or descendants thereof; that the deceased left a large estate, consisting of lands and personal property; that he owed but few small debts, which had been fully paid.

The bill further shows, that said John and Rebecca Sanders, in May, 1883, made a joint declaration in writing, in the presence of two attesting witnesses, acknowledged before the judge of probate, which was filed in the Probate Court and recorded in a book of deeds and wills declaring that they were desirous of adopting as their own the child of D. C. and Nancy Mims. Mrs. Mims was the sister of Mrs. Sanders, and died before the adoption. D. C. Mims, the father, gave written consent to the adoption. Mrs. Rebecca Sanders, John DeLoach, administrator of John N. Sanders, deceased, and the adopted child, John Sanders Mims, or John Sanders, were made defendants to the bill. A demurrer thereto was filed by DeLoach and by the adopted child. The

chancellor sustained the demurrer and dismissed the bill. Complainants appealed.

The articles or declaration of adoption were *in hæc verba:*

"The State of Alabama, ⎱ Know all men by these presents,
     Monroe County.  ⎰ that we, John N. Sanders and Rebecca F. Sanders, his wife, of said county and State, do hereby declare, in the presence of W. C. Sowell and Arthur T. Sowell, that we desire to adopt and do hereby adopt John Sanders Mims, a male child of David Crocket Mims and Nancy Mims, of —— years of age, so as to make him, the said John Sanders Mims, capable of inheriting our and each of our estate, real and personal. And we do further declare, that it is our desire that the name of said child be changed from John Sanders Mims, its present name, to John Sanders. Made and signed this the 25th day of May, A. D. 1883.

                              "J. N. SANDERS, | L. s. |
"In presence of                R. F. SANDERS, | L. s. |
     "W. C. SOWELL,
     "T. A. SOWELL."

"State of Alabama, ⎱ Before me, W. C. Sowell, judge of
     Monroe County.  ⎰ probate in and for said county, personally appeared John N. Sanders and Rebecca F. Sanders, his wife, and who are known to me to be the declarants in the above and foregoing declaration, and being informed of the contents of the declaration, acknowledged before me that they executed the same voluntarily on the day the same bears date. Given under my hand this the 25th day of May A. D. 1883. W. C. Sowell, judge of probate, Monroe county."

"I, W. C. Sowell, judge of probate, hereby certify that the foregoing instrument was filed for record in my office on the 25th day of May, 1883, and recorded in vol. 22, page 460, of Wills and Deeds. W. C. Sowell, judge of probate."

CUMMING & HIBBARD, for appellant, insisted that the articles of adoption were invalid. 1. The declaration was not recorded "on the minutes of the Probate Court," but in a book of deeds and wills.—Code of 1886, §§ 2365-2368. This failure to record "on the minutes" is *not* a *ministerial*, but a judicial error which can not be corrected after the death of declarant.—Freeman on Judgt. § 531; *McDuffie v. Cook,* 65 Ala. 430; *Tyler v. Reynolds,* 53 Iowa, 146; 44 Iowa, 363; 56 Iowa, 578. As to what are "minutes of the court," see

[Abney et al. v. DeLoach, Adm'r, et al.]

Code of 1886, §§ 652, 789, par. 2, 4, 6, 7; 66 Ala. 123. The provisions for recording conveyances of property, and other papers, are entirely different.—Code of 1886, §§ 1791–1822, 1682, 1299, 1306, 2516, 3024, 1983. The statutes of adoption are in derogation of the common law and must be strictly construed.—*Russell v. Russell*, 84 Ala. 48. General statutes are declaratory, remedial, and penal. This adoption statute is neither, but it curtails the natural rights of children, and should be strictly construed.—Sedg. on Stat. & Const. Law; 1 Bibb (Ky.), 215; 9 Port. 266; 29 Ala. 651. If one requirement of the statute can be omitted, another can, all can, sex, age, name, acknowledgment, filing and recording.—44 Iowa, 363; 53 Iowa, 146; 56 Iowa, 578. 2. The declaration fails to state the age of the child. 3. The acknowledgment is insufficient. It does not appear where is the residence of John N. Sanders. There is no acknowledgment by the declarants that "they were informed of the contents of the declaration," nor does the acknowledgment show when the declarants made it.—*Shearer v. Weaver*, 56 Iowa, 578; 66 Ala. 600; 70 Ala. 353. The rule in *Sharpe v. Orme*, 61 Ala., does not here apply.

WATTS & SON, and NICH. STALLWORTH, *contra*, contended that, 1. The proceedings to adopt a child under the Alabama statute was not the judicial act of a court. The judge of probate acted in a ministerial capacity; his duties therein could be performed by his clerk, acting in his name.—*Halso v. Seawright*, 65 Ala. 431. 2. It has long since been settled in Alabama, that a deed acknowledged by the grantor "on the day it bears date" is properly certified, without the statement that the grantor "acknowledged that he executed it on the day it bears date."—21 Ala. 72; 2 Ala. 203; 20 Ala. 112; 8 Ala. 357; 19 Ala. 753; 61 Ala. 263. 3. The declaration is to be treated as a deed conveying the right to inherit, and the name, sex and age of the child in the declaration is merely means of identification.—1 Dev. on Deeds, §§ 184, 185, 189; 12 Mass. 447; 14 Mo. 420; 29 Mich. 1; 61 Ala. 518; 14 R. I. 38. 4. A failure to record the declaration on the "minutes of the court" does not defeat the rights of the child.—3 Stew. & Por. 397; 54 Ga. 9; 10 Ala. 365; 51 Ala. 546; 67 Ala. 265; 61 Ala. 468; 65 Ala. 336; 35 Ala. 23.

SOMERVILLE, J.—The bill is filed by certain kindred of John N. Sanders, deceased, claiming to be heirs and dis-

tributees of his estate, and seeking to bring the administrator to a settlement of his trust in a Court of Chancery. The bill makes one John Sanders Mims, *alias* John Sanders, who is a minor, a party defendant, as one who claims to be solely entitled to the estate, subject to the dower and distributive rights of the widow of the deceased. This claim is stated to be based on a declaration in writing, executed by John N. Sanders, the deceased, during his life-time, and attested, acknowledged and filed for record in the office of the judge of probate of Monroe county, which instrument purports to *adopt* said minor as the lawful heir of the intestate, under the provisions of our statute regulating the mode of adopting children.—Code, 1886, §§ 2365–2368; Code, 1876, §§ 2743–2745; Code, 1852, §§ 2009–2011.

Section 2365 of the present Code, which has remained unaltered in phraseology since the Code of 1852 (§ 2009), where the statute first appeared in its present form, has reference only to proceedings to legitimate bastard children. It declares that this may be done by the father of the bastard, by his making a declaration in writing, attested by two witnesses, setting forth certain specified facts, duly acknowledged by the maker, or probated by one of the attesting witnesses, "*filed* in the office of the judge of probate, and *recorded on the minutes of his court.*" It is provided in the following section that the father may, at the same time, change the name of the said child by stating in his declaration the name it is then known by, and the name he wishes it afterwards to have.—Code, 1886, § 2366; Code, 1876, § 2744.

Then follows this section as to the mode of adopting any child of another into one's family, which is the law governing the rights of the parties in this case:

"Any person desirous to adopt a child so as to make it capable of inheriting his estate, real and personal, or to change the name of one previously adopted, may make a declaration in writing, attested by two witnesses, setting forth the name, sex and *age* of the child he wishes to adopt, and the name he wishes it thereafter to be known by, which being *acknowledged* by the declarant before the judge of probate of the county of his residence, *filed and recorded as in the two preceding sections*, has the effect to make the child capable of inheriting such estate of the declarant and of changing its name to the one stated in the declaration; and for the services under this chapter the judge of probate is entitled to a fee of one dollar."—Code, 1886, § 2367 (2745.)

[Abney et al. v. DeLoach, Adm'r, et al.]

Adoption is the taking into one's family the child of another as son and heir, conferring on it "a title to the privileges and rights of a child',—an act, in other words, "by which a person appoints as his heir the child of another." *Russell v. Russell,* 84 Ala. 48. The right with us is purely statutory, and was never recognized by the rules of the common law. It was, however, a feature of the Roman law, and obtains in Germany and France, and some other continental nations of Europe, whose jurisprudence in this respect has followed the civil law. It prevailed also as a custom among the ancient Jews. Statutes regulating different modes of adoption prevail in, perhaps, a dozen or more of the American States. In this State prior to the Code of 1852, the right of adoption was limited to the legitimation of bastard children by their fathers. The mode of procedure was for him *"to file in open court,* in either the *County* or *Circuit* Court" of the county in which he resided, a declaration or statement in writing, setting forth the name and age of the child, and the name of the mother, and his recognition of it as his natural child, which, after being signed by the father, was required to be attested by the clerk of the court in which it is filed, and *entered at full length of record."*—Clay's Dig. (1843) p. 135, § 9. In most of the States, the mode pursued is by petition to the Probate or other like court, stating the requisite facts, with the name and description of the child, and the desire of the petitioner to adopt it, alleging the consent of the child's parents or guardian to the act of adoption, and usually the child's consent, if over fourteen years of age. A decree is made by the court on these facts, which judicially confers on the child the capacity or qualification to inherit, and other incidents of the *status* authorized by the statutes of the particular States where the proceeding is had. This is a judicial procedure, involving the rendition of a judgment by the court by which the new status of the child is determined, and from which an appeal is usually authorized to some superior tribunal. This course is pursued in Massachusetts, Pennsylvania, Kansas, Illinois and other States. The other mode is the one now authorized in Alabama, Texas, California, Iowa, Vermont and other States, which is intended to be more simple and inexpensive. It consists of a written instrument, declaration or statement, more in the nature of a deed than anything else, which is required to be executed, attested, acknowledged, and filed for record in the Probate, or other court of cognate jurisdiction.

There is nothing judicial connected with this simple proced-
ure. Even the taking of the acknowledgment by the pro-
bate judge is purely a ministerial and not a judicial act.
*Halso v. Seawright,* 65 Ala. 432. The maker or declarant
is analogous to the grantor in an ordinary deed; the adopted
child is the grantee, and the thing granted is the irrevocable
right, capacity or qualification to inherit, or succeed to the
property of the adopter, in case he should die intestate.
This *quasi* deed is to be recorded, rather as a perpetual
memorial of the fact of adoption than to subserve the pur-
pose of constructive notice, as in the case of conveyances of
property.—*Ross v. Ross,* 129 Mass. 243; s. c. 37 Amer.
Rep. 321; *Ballard v. Ward,* 89 Penn. St. 358; *Bancroft v.
Bancroft,* 53 Vt. 9; *Ortiz v. DeBenavides,* 61 Tex. 60; *Pina
v. Peck,* 31 Cal. 359; *Tyler v. Reynolds,* 53 Iowa 146;
Schouler on Dom.. Rel. 314; 2 Kent. *212 *et seq.*

While these statutes authorizing adoption are in deroga-
tion of the common law, and for this reason are, in some
respects, to be strictly construed, their construction can not
be narrowed so closely as to defeat the legislative intent
which may be made obvious by their terms, and by the
mischief to be remedied by their enactment.

So much for the provisions and purposes of the statute,
and the rule and analogies by which we are to be governed
in its construction and application.

The declaration of adoption, with other accompanying pa-
pers, is set out in the bill *in haec verba.* It is signed by
both J. N. Sanders, the intestate, and his wife, R. F. San-
ders, and appears to be the joint and several act of each.
It is attested by two witnesses, acknowledged, and filed for
record with the probate judge of Monroe county, and was
by him recorded, not " on the minutes of his court," but in
a book kept by him for the recording of deeds and wills.
The proceedings are in due form unless some one of the
objections specially taken to them by demurrer is well taken.
These we proceed to consider.

It is first objected that the written declaration fails to
state the *age* of the child, this being left blank, This does
not, in our opinion, invalidate the proceeding. If it be con-
ceded that, contrary to the rule of the Roman law, no adult
can be adopted under our statute, and that it applies exclu-
sively to minors—which we do not decide—the word "child"
used in describing the adopted would *prima facie,* at least,
import an infant, or very young person, and the bill shows

that the claimant in this case was over fourteen and under twenty-one years of age. The written declaration, moreover, sets forth his full name and sex, and describes him as the child of David Crockett Mims and Nancy Mims. Here is a complete identification of person beyond any reasonable possibility of mistake, accompanied by terms which indicate that the person adopted is a minor, under twenty-one years of age. This, we think is sufficient, and accomplishes every reasonable intendment which the law maker had in view. *Jones v. Morris*, 61 Ala. 518; *Sewell v. State*, 82 Ala. 57.

The further objection is taken that *the acknowledgment* of the instrument before the probate judge is fatally defective. No particular form of acknowledgment is given by the statute, but the obvious reference is by implication to the form prescribed for ordinary conveyances, which must be understood as being adopted for this class of cases.—Code, 1886, § 1802 (2158). The first defect insisted on is that the form in the record recites that the declarants "being informed of the contents of the declaration," acknowledged that "they *executed* the same voluntarily on the day the same bears date." The Code form reads that the signer acknowledged, *that being informed* of the contents of the conveyance, he executed the same voluntarily. There is no acknowledgment, it is said, that they were informed of the contents of the paper; only an acknowledgment that they executed it. This criticism is too severe and technical. The certificate of the officer that the declarants were informed, does not differ in substance from their *acknowledgment* that they were informed—it being no uncommon thing for the officer himself to verify such information by personal instructions.

The other objection is that the form fails to show *when* the maker made the acknowledgment, the words "this day" following the words "appeared before me" in the Code form being omitted. It has long been the settled law in this State, as to deeds, that when such an instrument is acknowledged by the grantor on the day of its date it is a sufficient compliance with the statute, although the certificate of acknowledgment does not state that he *acknowledged* that he executed it on the day of its date.—*Bradford v. Dawson*, 2 Ala. 207; *Carter v. Chaudron*, 21 Ala. 72; *Parsons v. Boyd*, 20 Ala. 112; *Harbinson v. Harrell*, 19 Ala. 753.

The recital in the instrument that the makers were of "said county and State," obviously has reference to the county of Monroe, which appears in its margin, and must be

[Abney et al. v. DeLoach, Adm'r, et al.]

construed to have reference to the county of the makers'
domicil or residence.   Such recitals in deeds and wills are
ordinarily *prima facie* evidence of the fact of the declarant's
domicil or residence, liable to be rebutted by proof to the
contrary.—*Merrill v. Morrissett*, 76 Ala. 433; *Ennis v.
Smith*, 14 How. (U. S.) 400.   The paper, therefore, shows
*prima facie* a sufficient compliance with the requirements of
the statute that it must be acknowledged by the declarant
"before the judge of probate of the county of his residence."
Code, 1886, § 2367 (2745).

It is further suggested, as appears from the bill, that the
declaration of adoption was not "recorded on the minutes"
of the Probate Court, as seems to be required by the statute.
Section 2367 of the Code (1886) provides that the paper
shall be "filed and recorded as in the two preceding sec-
tions," and that conforming to the several requirements pre-
scribed "has the effect to make such child capable of inher-
iting such estate of the declarant, and of changing its name
to the one stated in the declaration."   But one of the two
preceding sections (§ 2365) has any reference to the subject
of filing and recording, and this provides that the written
declaration, authorized to be made by the father of a bastard
child for the purpose of legitimating it, after being properly
executed and acknowledged, shall be "filed in the office of
the judge of probate, and recorded on the minutes of his
court."—Code, § 2365.   This inconvenient requirement
seems to have been brought forward from the old statute
found in Clay's Digest (p. 135, § 9), where the declaration
was required to be "filed in open court," either probate or
circuit, "and entered at full length of record," analogous to
the procedure in those States where adoption is effected by
judicial decree.   It appears that the paper was *filed* in the
office of the judge of probate, but was not recorded "on the
minutes of his court."   It was recorded only in the book of
wills and deeds.   It is contended that the failure to record
the instrument as required is fatal to its validity, because
the statute in effect declares that when all these things are
done the act of adoption is complete.

Admitting the correctness of the construction placed by
appellants' counsel on the phrase "recorded on the minutes
of his court," which seems to be severely literal, and against
which much can be urged, the inquiry arises, does the neg-
lect of the probate judge to do his duty, by properly re-
cording the paper, operate to destroy its legal validity, when

[Abney et al. v. DeLoach, Adm'r, et al.]

the maker and beneficiary have done all that the law requires of them to do, and which they possibly can do to perfect it?

The purpose of recording such a paper can not be to give notice of the act of adoption, or of the rights acquired under it, to any one. All it confers, as we have seen, is the capacity to inherit property. It does not affect the rights of creditors or subsequent purchasers in any respect. The only object had in view by this legislative requirement must have been to furnish some definite evidence of the fact that the transaction was genuine and in good faith, and as a perpetual memorial of the fact that it is complete.

There being nothing whatever judicial in the proceeding, and all the formalities attending its execution, attestation and acknowledgment, being analogous to those in reference to deeds of conveyance, to say nothing of the rights acquired under it, we can perceive no sound reason why the same analogies do not apply in reference to the act of recording. Statutes are to be given a reasonable construction, and every construction leading to an absurdity is to be avoided as far as it is possible to do without perverting the clearly expressed legislative intent. The rule settled in this State more than fifty years ago, and uniformly followed since, is that the failure of a recording officer to discharge his duty by registering an ordinary conveyance, which has been filed with him for record, in proper time, does not invalidate the instrument, or impair the rights of the parties under it, even as against subsequent purchasers. The case of *McGregor v. Hall*, 3 Stew. & Port. 397, cited by appellee's counsel, is directly in point. The act of January, 1828, provided that "hereafter, all deeds and conveyances of personal property, in trust, to secure any debt, or debts, *shall be recorded* in the office of the clerk of the county court of the county wherein the person making such deed or conveyance, shall reside, *within thirty days*, or *else the same shall be void* against creditors and subsequent purchasers without notice." The mortgage in question was left in the proper office and with the proper officer, to be recorded, some four or five days before the thirty days had expired, but was not recorded until after the lapse of the thirty days required by the statute. The contention there, as here, was that there was no compliance with the statutory requirement, and that the statute made the conveyance void as to creditors, unless it was actually recorded. The court declared that to be governed by the letter of the statute would defeat the legislative inten-

[Abney et al. v. DeLoach, Adm'r, et al.]

tion. The purpose clearly had in view, involving the motive of the law giver, which was to afford notice to creditors and subsequent purchasers, was rather to govern. It was said: "If the party in interest does all that he can to give such notice, especially if the act done be equivalent to the one required towards effecting that object, it would be wrong to injure him for the negligence of an officer, who has been regularly appointed, according to the laws of the land, for the purpose of discharging this duty, and may, therefore, be viewed, in some measure as chosen by the parties to the instrument legally deposited with him, for the especial purpose of putting them upon record." The court declined to visit the negligence of the recording officer on the grantee, and held that the proper filing of the mortgage for record was a compliance with the statute, and made it operate as constructive notice to creditors although it was unrecorded.

This ruling was followed in *Dubose v. Young*, 10 Ala. 365, decided in 1846, GOLDTHWAITE, J., observing as follows: "The decision made in *McGregor v. Hall*, 3 S. & P. 397, is conclusive, that the deposit for record is equivalent, so far as the question is connected with registration, to the recording of the deed." These decisions were not based on any statute, but were afterwards carried into the Code of 1852, where the principle settled by them received legislative sanction by the provision there made, that conveyances, required to be recorded in the probate office are "operative as a record from the day of the delivery to the judge, and any one delivering a conveyance for registration, may require a receipt for the same, describing it by date, parties thereto, and property conveyed.—Code, 1852, § 1270; Code, 1886, § 1793. The statute itself is but a legislative adoption of the broad and just principle, that "when a party discharges a duty imposed by law, the omission or neglect of a public officer, in the discharge of a subsequent duty, shall not be invoked to his prejudice."—*Floyd v. Clayton*, 67 Ala. 265; *Halfman v. Ellison*, 51 Ala. 543.

A person who searches for the discovery of papers required to be recorded is thus required not only to search the proper records, but also to ascertain whether any such paper has been filed to be recorded. We are of opinion that the rule declared in *McGregor v. Hall, supra*, is sound, and is applicable with great force, to the present case, where the failure to record the paper could by no possibility operate to prejudice third persons.—*Jordan v. Farnsworth*, 15 Gray. 517;

(Gen. Stat. Mass. 1860, p. 766); *Dodge v. Potter*, 18 Barb. (N. Y.) 193; *People v. Bristol*, 35 Mich. 28; Jones on Chat. Mortg. § 272.

Any other construction of the statute would lead not only to monstrous injustice, but to results little less than absurd. It would defeat the rights of the innocent beneficiary of the paper by many accidents, and even wrongful acts of the officer, for which there might be no remedy. The destruction of the paper by fire, or the purloining of it by an interested person, after delivery and before record, the intentional or fraudulent withholding or delay of its registration by the officer, a material error made in recording it, or the death of the maker during the progress of a *mandamus* proceeding to compel registration, with other like cases that would suggest themselves, might all be visited disastrously upon the adopted child, although entirely innocent of complicity in these various causes producing the failure of the registration officer to make the required record. We cannot believe that this was the legislative intent.

The cases of *Tyler v. Reynolds*, 53 Iowa, 146, and *Shearer v. Weaver*, 56 Iowa, 578, construing the Iowa statute on the subject of adopting children, and cited by appellants' counsel, do not conflict with the views above expressed. That statute provided that "upon the execution, acknowledgment and *filing* for record of such instruments," the act of adoption should be complete. No question arose as to registration, for none was required by the statute. It was held that the failure to file the paper for record until after the death of the maker defeated the rights of the child, the adoption being incomplete without it. The filing was an act of the party interested. The recording is the act of an officer over whom the parties to the paper have no control. Those cases and this rest on entirely different principles.

But one other point remains for consideration. It is suggested in the bill that the adoption paper was signed by both John N. Sanders and his wife, and that the signature of the wife rendered it invalid as the joint act of both, a form of adoption which, it is said, is unauthorized by the statute. We do not think that a valid juridical act by one person can be rendered invalid by the consent or signature of another. The most that can be urged is that the signature of the wife was mere surplusage. It could not vitiate the act of the husband, who was *sui juris*, and, as we have shown, who complied with every essential requisite of the statute in the

[Morrison v. The State.]

proceeding by which he sought to adopt the child named in the instrument of adoption.

We are of opinion that the demurrer to the bill was properly overruled, and that the decree of the chancellor must be affirmed.