**BUTTREY v. WEST et al. (8 Div. 710.)**

(Supreme Court of Alabama. Dec. 18, 1924.)

**1. Adoption ⬅20—Adoption of child creates status of parent and child, with duty of care, etc.**

In addition to right to inherit and change of name, adoption of a child in statutory manner accompanied by taking child into family, creates status of parent and child, with duty of care, maintenance, training, and education along with right to custody, control, and service of child.

**2. Adoption ⬅20 — Rights and obligations created by statutory adoption are subject to paramount power of state as parens patriæ.**

Rights and obligations created by adoption of a child as provided in Code 1923, § 9302, are subject to paramount power of state as parens patriæ, exercised through a court of equity, to dispose of person of an infant as its higher interests may demand.

**3. Adoption ⬅16—Volunteer cannot by statutory adoption defeat rights of natural parent in his offspring.**

A volunteer cannot by adoption of a child, as provided in Code 1923, § 9302, in any way defeat rights of a natural parent in his offspring.

**4. Adoption ⬅16—Adoption of child may be given weighty consideration in fixing its custody.**

That a child has been adopted and given a home by a foster parent may be given weighty consideration by a court of equity in fixing its custody even on claim of parent, especially one who has invited foster parent to assume such relation.

**5. Adoption ⬅16—Proceeding to annul declaration of adoption is judicial.**

Proceeding to annul declaration of adoption is judicial, in view of Code 1923, § 9302, providing that court's jurisdiction shall be invoked by petition, that a hearing be had on notice, and that there shall be a finding of "good cause" for annulment, which shall take form of a decree entered of record.

**6. Adoption ⬅16—Foster parent's desire to annul relation not "good cause" for so doing.**

Where one has voluntarily adopted a child, his mere wish or desire to annul relation is not "good cause," within Code 1923, § 9302, for so doing.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Good Cause.]

**7. Adoption ⬅16—Relation not annulled for slight cause on either side.**

Courts should not annul adoption, under Code 1923, § 9302, for slight cause on either side, nor should they deal with such severity as to deter good people from taking up relation.

**8. Adoption ⬅16 — Disobedience, etc., not "good cause" for annulment, unless parent blameless and child responsible.**

That child adopted when 20 months of age, and who has been in foster parents' home ever since, and who has not reached 12 years of age, is "disobedient," "disrespectful," or "recalcitrant and incorrigible," held not "good cause" for annulment of adoption, within Code 1923, § 9302, without full averments and proof that such traits are not due to any fault of parent.

**9. Adoption ⬅16—Relation not annulled for traits of adopted child, unless child has reached such maturity as to be responsible for crime.**

That an adopted child is "recalcitrant and incorrigible" is not good cause to annul the adoption, unless child has reached such maturity as to be responsible for crime.

Appeal from Probate Court, Morgan County; L. P. Troup, Judge.

Petition by John A. Buttrey to revoke the adoption of a child. From a decree sustaining demurrers of respondents Mary E. Buttrey and Marvin West, as guardian ad litem for the minor, petitioner appeals. Affirmed.

The amended petition to revoke the adoption of the child is as follows:

"Your petitioner, John A. Buttrey, respectfully represents unto your honor that on the 28th day of July, 1914, petitioner and Mary

E. Buttrey, who was, and is now petitioner's wife, made a declaration adopting one Josephine Bynum, who was then about 20 months old, and the daughter of Bessie Bynum, who renounced jurisdiction over said child. The adoption was by petitioner and Mary E. Buttrey, as provided for in section 5202 of the Code of Alabama, as amended, and the name by which it was declared it was desired that said child would thereafter be known was Dorothy Gwendolyn Buttrey. Since said date said child has lived with petitioner and said Mary E. Buttrey, at petitioner's home in Albany Ala., which was, at that time, New Decatur, Ala., in Morgan county, and is so living at the present time.

"Petitioner desires to annul the said declaration whereby the said child was adopted by petitioner and said Mary E. Buttrey, under the provisions of said section 5202 of the Code of Alabama, as amended, in so far as said declaration relates to himself, and whereby said child became adopted by petitioner and said Mary E. Buttrey. Said child is disobedient to the petitioner. Said child is disrespectful to petitioner. Said child is disobedient and incorrigible and recalcitrant to her father's wishes.

"Petitioner prays that this court give such notice as may be prescribed by it for the hearing of this petition, and, upon the hearing thereof, it will render a decree to be entered of record, annulling such declaration hereinabove mentioned, whereby said child was adopted, under the provisions of said section 5202 of the Code, as amended, in so far as the same relates to or affects, in any way, your petitioner."

A guardian ad litem, appointed to represent the child, joined in the demurrer filed by Mary E. Buttrey, on the following grounds:

"(1) No ground to revoke said adoption is shown by said petition.

"(2) Said petition shows no good reason for revoking said adoption.

"(3) By the adoption so sought to be revoked, the said child, Dorothy, has been deprived of any right to inherit from her parents, who have renounced jurisdiction over her, and the petitioner shows no good reason why the responsibility that he voluntarily assumed should be renounced, and the said child be deprived of any right to support from him, and of all her right to inherit his property, which privileges and rights were conferred upon said child by voluntary act of the said Buttrey.

"(4) The disobedience of said child is no sufficient or good cause for the revocation of the adoption; nor is said child's incorrigibility nor its disrespectfulness.

"(5) The misconduct of the infant is not a ground for dissolving the relation of parent and child.

"(6) It is not denied that the unfilial conduct of the child is petitioner's fault."

The demurrers being sustained, and petitioner declining to further plead, the petition was dismissed. The appeal is to review these rulings.

Eyster & Eyster, of Albany, for appellant.

The mere fact that petitioner wanted the adoption annulled is a good and sufficient reason for its annulment. Code 1907, § 5202; Code 1923, § 9302; Prince v. Prince, 194 Ala. 455, 69 So. 906; Russell v. Russell, 84 Ala. 48, 3 So. 900; Abney v. Deloach, 84 Ala. 393, 4 So. 757; Cofer v. Scroggins, 98 Ala. 342, 13 So. 115, 39 Am. St. Rep. 54; Murphree v Hanson, 197 Ala. 246, 72 So. 437.

E. W. Godbey, of Decatur, for appellees.

Adoption may be revoked only for good cause. Acts 1911, p. 114. Undutifulness is no good ground for annulment. 1 R. C. L. 625; 1 C. J. 1393; In re Williams, 102 Cal. 70, 36 P. 407, 41 Am. St. Rep. 163.

BOULDIN, J. The adoption of children is of very remote origin. It was known to the laws of most ancient civilizations. The incidents of the relation varied according to the customs of the age and race. Those interested in the pursuit of the study are referred to the opinion of Mr. Justice Lamm, of the Supreme Court of Missouri, in Hockaday v. Lynn, 200 Mo. 456, 98 S. W. 585, 8 L. R. A. (N. S.) 117, 118 Am. St. Rep. 672, 9 Ann. Cas. 775. See, also, our own case of Abney v. DeLoach, 84 Ala. 393, 4 So. 757.

In its accepted sense, the legal status of the adopted child was not recognized by the common law of England. Feudal tenures did not lend themselves to heirship in strangers to the blood. The common law did, however, recognize the relation of persons in loco parentis, imposing upon the person voluntarily assuming the relation of parent, by taking the child into his family, the duties of care, maintenance, and education, with the consequent rights of custody, control, and service of the child, as against persons other than the natural parent. Mobley v. Webb, 83 Ala. 489, 3 So. 812; Dean v. State, 89 Ala. 46, 8 So. 38; 29 Cyc. 1670–1672.

American states, except those where the civil law prevailed, followed the common law in this regard. Statutes authorizing the adoption of children are now in force in most, if not all, of the states. Early decisions, treating these statutes as in derogation of the common law, inclined to a strict construction. Latterly the tendency has been toward a liberal interpretation in furtherance of the beneficent purposes leading to their enactment. Some statutes provide a judicial proceeding in order to an effectual adoption of a child. Decisions on questions arising under these statutes must be read in the light of such proceedings.

In Alabama, the statute for adoption first appeared as section 2011, Code of 1852. The method there prescribed has been brought forward into successive Codes without change of words, and is now found in section 9302 of the Code of 1923. This method is by

a declaration in writing attested, acknowledged, filed, and recorded. It is not a judicial proceeding, but an ex parte declaration of the adopting parent, given the sanction of law in fixing the legal status between him and the child. The duty of the judge of probate in taking the acknowledgment is judicial in the same sense as taking acknowledgments to conveyances, giving verity to the instrument. The record of the declaration is merely ministerial, and the neglect of the judge of probate to record is not fatal. Murphree v. Hanson, 197 Ala. 247, 72 So. 437; Abney v. DeLoach, supra; Prince v. Prince, 188 Ala. 559, 66 So. 27.

The "effect" of such declaration is declared by the statute to be:

"To make such child capable of inheriting the estate of such declarant, and of changing its name to the one stated in the declaration."

These enumerated effects are said to have been named ex industria; the effects accruing by a statutory adoption in addition to the common-law rights and duties growing out of the relation of persons in loco parentis.

"If the word 'inheriting' had been left out of our statute, we think it would probably be our duty to hold that an adopted child would take under the term 'children.' Adoption of children is 'an act by which a person appoints as his heir the child of another.' Rap. & Law. Law Dict. 'To receive and to treat as a son or daughter one who is the child of another.' Worcester Dic. 'To take into one's family as son and heir; to take and treat as a child, giving a title to the privileges and rights of a child.' Webs. Dict." Russell v. Russell, 84 Ala. 48, 51, 3 So. 900; Cofer v. Scroggins, 98 Ala. 342, 13 So. 115, 39 Am. St. Rep. 54.

"Adoption is the taking into one's family the child of another as son and heir, conferring on it 'a title to the privileges and rights of a child.'" Abney v. DeLoach, 84 Ala. 393, 398, 4 So. 757, 759.

"* * * It was appropriate that, in the statute which we have above quoted [Code, 1907, § 5202], our Legislature should provide that an adopted child should be capable of inheriting the estate of the person adopting him. The status of the parties being fixed, it was appropriate that all the incidents usually attendant or flowing out of the relations so established should attach to both the adoptive parent and child. For this reason this court has held that an adopted child is entitled, during minority, to claim exemptions out of his adoptive parent's estate. Cofer v. Scroggins, 98 Ala. 346, 13 So. 117, 39 Am. St. Rep. 54." Prince v. Prince, 188 Ala. 559, 560, 66 So. 27, 28.

"Though adoption may not, by operation of the statute, originate and establish all the legal consequences and incidents of the natural relation of parent and child, when the adoptive father declares his own name as the name which he wishes the child to be thereafter known, and takes it into his family to be treated as a child, he assumes the duties of a natural parent, and is, entitled to its custody and services, or earnings, as against all persons, unless it may be the true parents, when they have not consented to the adoption." Tilley v. Harrison, 91 Ala. 295, 297, 8 So. 802; Cofer v. Scroggins, 98 Ala. 342, 13 So. 115, 39 Am. St. Rep. 54.

[1] It seems clear from these authorities that, in addition to the right to inherit and change of name, the adoption of a child, in the statutory manner, accompanied by taking the child into the family, creates the status of parent and child, with the duty of care, maintenance, training, and education, along with the right to the custody, control, and services of the child.

[2, 3] All this, however, is subject to the paramount power of the state as parens patriæ, exercised through a court of equity, to dispose of the person of an infant as his or her higher interests may demand. Neither can a volunteer, by statutory adoption, in any way defeat the rights of the natural parent in his offspring. Murphree v. Hanson, 197 Ala. 247, 72 So. 437.

[4] Again, the fact that the child has been adopted and given a home by the foster parent, with all the rights that inhere in the relation, may be given weighty consideration by a court of equity in fixing the custody of a child, even upon the claim of the parent, especially a parent who has consented and invited the foster parent to assume such relation. Norton v. Alexander, 201 Ala. 498, 499, 78 So. 852; Kirkbride v. Harvey, 139 Ala. 231, 35 So. 848. Our statute from 1852 to 1897 made no provision for the revocation of the deed or declaration of adoption.

In Abney v. DeLoach, 84 Ala. 393, 4 So. 757, it was said:

"The maker or declarant is analogous to the grantor in an ordinary deed. The adopted child is the grantee, and the thing granted is the irrevocable right, capacity, or qualification to inherit, or succeed to the property of the adopter, in case he should die intestate."

This case involved the rights of adopted children as heirs of a decedent. The quoted statement referred to the binding nature of the act on the declarant.

In McClure v. Williams, 201 Ala. 499, 78 So. 853, the court recognized the equity of a bill by the natural parent to cancel and annul the declaration of adoption in a proper case. Under general principles it would seem that a court of equity in the exercise of its power to dispose of the person of infants and to protect the rights of the natural parent may do complete equity in protecting the right of the foster parent also but this question is not now before us.

February 18, 1897, the statute was amended, as now appears in Code of 1923, § 9302, by adding:

"But the judge of probate may, on petition of said child, or the party adopting the child, after notice given as prescribed by him and after hearing and for good cause shown, by a

decree to be entered of record, annul in whole or in part any such declaration whereby any child has been adopted under the provisions of this section."

By act of March 11, 1911, the statute was further .amended, as also appears in Code of 1923, § 9302, as follows:

" * * * But if it is desired to adopt such child only for the purpose of changing its name, as above provided and of educating and maintaining such child, the declaration shall expressly state that such child shall not inherit the estate of the declarant."

It may be noted that this clause of the statute gives recognition to the duty of maintenance and education as one of the incidents of the relation of parent and child growing out of adoption.

[5] It needs no argument to show that the proceeding to annul the declaration of adoption is a judicial proceeding. The statute declares the court's jurisdiction is invoked by petition; that a hearing be had on notice; that there shall be a finding of "good cause" for annulment, and such judicial finding shall take the form of a decree entered of record.

[6] We cannot concur with appellant in the view that the declarant having voluntarily, of his own "desire," entered into the relation of parent and child, his wish or "desire" to annul the relation is "good cause" for so doing. The statute recognizes legal duties growing out of the adoption, the rights and duties of the most intimate and vital of human institution, the family. The statute makes no effort to define "good cause." For obvious reasons it would be futile for us to do so. Every case must be governed by its own attendant facts. The right of annulment in a proper case is given to either party. The child, by next friend, is permitted, for misconduct or failure of duty of the foster parent, or because of change in the conditions or fortunes of the parties, to ask and obtain relief when justice and the greater good will be thereby promoted.

So, also, the foster parent has rights as well as duties—the right of companionship and service, the opportunity to bring up the child with correct views of social and civic duty, to train and educate him for useful work and a position of standing among men, to do by and for him what the father delights to do for his son. If these ends are defeated, without fault of the foster parent, by misfortune, by the intervention of the higher claims of others, or by perversity or ingratitude of the child when arrived at such maturity that the sense of mutual obligation should obtain, the statute opens the door to the foster parent for such relief as the judicial conscience shall find supported by good cause—a just cause.

[7] Courts should not annul the relation for slight cause on either side, nor should they deal with such severity as to deter good people from taking up the beneficent task the relation implies.

[8, 9] Applying all these principles, as best we may, to the case before us, we note that the petition shows the mother renounced her control over the child and committed her to petitioner and his wife when 20 months of age; that she has been in their home, subject to their control, ever since; that she has not yet reached 12 years of age. The matters set up as good cause for annulment relate solely to the attitude or conduct of the child toward petitioner. They are:

First, "disobedient." One of the highest tasks, assumed by the parent, is to train the child to obedience. Obedience to parental authority is a foundation for obedience to the laws of the state, and even the divine law. Second, "disrespectful." Under the normal conditions of family life, the respect of the child toward the parent depends upon the personality of the parent. Unless the attitude of the child is warped by a more dominant personality, respect normally comes from a little child where respect is due. Disrespect and disobedience, without more, is rather a confession of failure on the part of the parent than a grievance against the child. Third, "recalcitrant and incorrigible." These are severe terms. They import a condition of hopeless perversity. In dealing with these charges, we note this child has not arrived at that age when she is presumed to have such moral sense as to be responsible in law for wrongdoing. There are no averments showing unusual intelligence, nor development of the moral sense beyond the ordinary. The qualities complained of are those that parental control and daily influence are designed to avoid. We think in no case should the duties of a foster parent be annulled for these traits of character in the child, without full averments and proof that they are not due to any fault, neglect, or omission of duty by the parent. We think it safe to say, also, that these traits can furnish no good cause to annul the relation until it is averred and proven that the child has reached such maturity as to be responsible for crime.

The rulings of the court below were in harmony with these views.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.