835 So.2d 186 (2002)
Ex parte D.W. and J.C.W.
In re J.S. and E.S. v. D.W. and J.W.
1001467.
Supreme Court of Alabama.
February 8, 2002.
Rehearing Denied April 12, 2002.
*187 Randall W. Nichols of Massey & Stotser, P.C., Birmingham, for petitioners.
John M. Wood and Brian D. Turner, Jr., of Wood & Shaw, L.L.C., Birmingham, for respondents.
WOODALL, Justice.
This Court granted certiorari review to determine whether § 26-10A-30, Ala.Code 1975, is unconstitutional, as the Court of Civil Appeals held in this case that it was. J.S. v. D.W., 835 So.2d 174 (Ala.Civ.App. 2001). Presiding Judge Yates adequately stated the relevant facts in that opinion; there is no need to repeat them here. The issue presented is one of first impression before this Court. We reverse the judgment of the Court of Civil Appeals.

I.
The Alabama Adoption Code, which became effective January 1, 1991, is codified at § 26-10A-1 et seq., Ala.Code 1975. The constitutionality of the following section of the Alabama Adoption Code is at issue in this case:
"Post-adoption visitation rights for the natural grandparents of the adoptee may be granted when the adoptee is adopted by a stepparent, a grandfather, a grandmother, a brother, a half-brother, a sister, a half-sister, an aunt or an uncle and their respective spouses, if any. Such visitation rights may be maintained or granted at the discretion of the court at any time prior to or after the final order of adoption is entered *188 upon petition by the natural grandparents, if it is in the best interest of the child."
§ 26-10A-30, Ala.Code 1975. In short, that section allows the "natural grandparents of the adoptee" to petition for "post-adoption visitation rights" in the context of intrafamily adoptions. The section clearly abrogates, under certain circumstances, the common-law rule, which did not allow grandparents a legal right of visitation. See Ex parte Bronstein, 434 So.2d 780, 783 (Ala.1983).

II.
Under the authority of § 26-10A-30, the trial court granted the petitioners visitation rights. The adopting parents appealed to the Court of Civil Appeals. That court reversed the judgment of the trial court, holding that § 26-10A-30 unconstitutionally infringes upon the adoptive parents' fundamental right to parent. The Court of Civil Appeals based its holding upon its interpretation and application of the recent decision of the United States Supreme Court in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The Court of Civil Appeals discussed Troxel at length in its opinion, stating in part:
"While this appeal was pending, the United States Supreme Court handed down an opinion in which six Justices of that Court affirmed the Washington Supreme Court's decision striking down Washington's nonparental-visitation statute as an unconstitutional infringement on parents' fundamental rights to rear their children. Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000). In Troxel, the Supreme Court stated that, with regard to child-visitation rights, `the right of parents to make decisions concerning the care, custody, and control of their children' is a fundamental right protected by the Due Process Clause. The Supreme Court struck down the Washington statute, which allowed `any person' at `any time' to seek visitation rights with a child and provided that visitation might be awarded if `visitation may serve the best interest of the child.' 530 U.S. at 67, 120 S.Ct. at 2061.
"The plaintiffs in Troxel were the paternal grandparents of two illegitimate children of their deceased son; they sought visitation with the children. The grandparents requested two weekends of overnight visitation per month and two weeks of visitation during the summer. The mother did not oppose the visitation, but, instead, objected to the amount of visitation requested by the grandparents. The mother requested that the grandparents have one day of visitation per month, with no overnight stay. The trial court granted the grandparents visitation for one weekend per month, one week during the summer, and four hours on each grandparent's birthday.
"The mother appealed. The Washington Court of Appeals reversed the trial court's order and dismissed the grandparents' petition for lack of standing. On review, the Washington Supreme Court held that the grandparents had standing but that the statute was unconstitutional for two reasons. First, the court found that the statute did not require that a person seeking visitation make a showing that in the absence of the requested visitation the child was at risk, and such a showing, the court held, is required before the state can interfere with parents' rights to rear their children. Second, the court held that the statute was too broad in allowing `any person' at `any time' to seek visitation and requiring only that the visitation serve the best interests of the child.

*189 "The Supreme Court of the United States affirmed the Washington Supreme Court's judgment, concluding that what it called the `breathtakingly broad' statute, as applied to the mother, violated her due-process rights to make decisions concerning the care, custody, and control of her children. In reaching its decision, the Supreme Court noted that the statute contained no requirement that the parent's decision be given any presumption of validity or any special weight. 530 U.S. at 70, 120 S.Ct. at 2062-63. The Supreme Court held that because the grandparents had not alleged that the mother was unfit, it must be presumed that the mother had acted in the best interests of her children. 530 U.S. at 68, 120 S.Ct. at 2061. The problem, the Supreme Court said, was not that the trial court intervened, but that in so doing it gave no special weight to the mother's determination of her children's best interests. 530 U.S. at 69-70, 120 S.Ct. at 2062. Indeed, the trial court presumed the opposite and placed the burden on the mother to prove that visitation would not be in the best interests of her children. 530 U.S. at 69-70, 120 S.Ct. at 2062.
"The Supreme Court's plurality opinion in Troxel is also notable for the issues it left unanswered. First, the Court declined to determine whether, as a condition precedent to visitation, the Due Process Clause requires a showing of harm or potential harm to the child. The Court did not define `the precise scope of the parental due process right in the visitation context.' 530 U.S. at 73, 120 S.Ct. at 2064. The Court did not issue a per se holding that all nonparental visitation statutes are unconstitutional. 530 U.S. at 73-74, 120 S.Ct. at 2064. The members of the plurality agreed with Justice Kennedy's statement in his dissent that the `constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied.' 530 U.S. at 73, 120 S.Ct. at 2064-65. The reason the Court did not make a per se ruling on constitutionality is that states, in ruling on the constitutionality of their own nonparental-visitation statutes, have made these determinations in the past on a case-by-case basis, because the outcome depends on the application of those statutes. 530 U.S. at 73-74, 120 S.Ct. at 2064. The Troxel Court noted differing provisions in various state statutes governing grandparent visitation. 530 U.S. at 73-74, 120 S.Ct. at 2064. This too, would affect the constitutionality of a particular statute."
J.S. v. D.W., 835 So.2d at 179-80.
The Court of Civil Appeals focused upon the fundamental right of parents to rear their children, the linchpin of the United States Supreme Court's holding in Troxel. However, Troxel involved the rights of a natural mother, while this case involves the rights of adopting parents in the limited context of intrafamily adoptions. In our opinion, the Court of Civil Appeals erred in overlooking this significant distinction.

III.
In considering the constitutionality of § 26-10A-30, we must remember that "[i]t is well established that this Court should be very reluctant to hold any act unconstitutional." Ex parte Boyd, 796 So.2d 1092, 1094 (Ala.2001). In Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 9-10, 18 So.2d 810, 814-15 (1944), cert. dismissed, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945), this Court stated:
"Uniformly, the courts recognize that [the] power [to strike down a statute as unconstitutional] is a delicate one, and to *190 be used with great caution.... It follows that, in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.

"Another principle which is recognized with practical unanimity, and leading to the same end, is that the courts do not hold statutes invalid because they think there are elements therein which are violative of natural justice or in conflict with the court's notions of natural, social, or political rights of the citizen, not guaranteed by the constitution itself. Nor even if the courts think the act is harsh or in some degree unfair, and presents chances for abuse, or is of doubtful propriety. All of these questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern. This principle is embraced within the simple statement that the only question for the court to decide is one of power, not of expediency or wisdom."

(Emphasis added.) (Citations omitted.) In light of these principles, the relevant issue is quite simpledid the Legislature have the power to qualify the rights of adopting parents by enacting § 26-10A-30? We hold that the Legislature had such power, and that it properly exercised it.
"The right of adoption ... is purely statutory, and was never recognized by the rules of common law." Hanks v. Hanks, 281 Ala. 92, 99, 199 So.2d 169, 176 (1967). "Adoption ... is a status created by the state acting as parens patriae, the sovereign parent." Ex parte Bronstein, 434 So.2d at 781. Therefore, the rights of adopting parents are purely statutory, as defined in the Alabama Adoption Code.
As a general rule, "the adoption of a child ... creates the status of parent and child, with the duty of care, maintenance, training and education, along with the right to the custody, control and services of the child. Buttrey v. West, 212 Ala. 321, 102 So. 456 [(1924)]." Law v. Bush, 239 Ala. 612, 614, 195 So. 885, 887 (1940). In fact, the Alabama Adoption Code provides that "[a]fter adoption, the adoptee shall be treated as the natural child of the adopting parent or parents and shall have all rights and be subject to all of the duties arising from that relation." See § 26-10A-29(a), Ala.Code 1975. This general rule would appear to support the conclusion that, under Alabama law, adopting parents have the same right as the natural mother in Troxel to make decisions concerning the care, custody, and control of their child. However, because we are construing the statutory rights of the adopting parents, we must look beyond the general rule concerning their rights.
In construing a statute, the first rule is that the intent of the Legislature should be effectuated. Boackle v. Bedwell Constr. Co., 770 So.2d 1076 (Ala.2000). "[W]e must consider it as a whole and must construe [the statute] reasonably so as to harmonize all of its provisions." James v. McKinney, 729 So.2d 264, 267 (Ala.1998). When two sections of an act conflict, the last in order of arrangement controls. Alabama State Bd. of Health ex rel. Baxley v. Chambers County, 335 So.2d 653 (Ala.1976). Applying these well-established principles of statutory construction, *191 we must determine the effect of § 26-10A-30 upon the general rule stated in § 26-10A-29(a).
It was the clear intent of the Legislature in enacting § 26-10A-30 to give the trial court the authority to grant post-adoption visitation rights to the natural grandparents of the adoptee, when the adoptee is adopted by a family member. The only reasonable conclusion is that the Legislature intended to limit the rights of the adopting parents by allowing the possibility of court-ordered grandparent visitation over the objections of the adopting parents. Any other conclusion would fail to give any effect to § 26-10A-30, in violation of this Court's duty to harmonize the statutory provisions in order to give effect to all parts of the statute.

IV.
Under the facts of this case, adopting parents, whose rights are exclusively dependent upon statutory law, must be treated differently than natural parents. The Court of Civil Appeals erred in failing to note this distinction and, as a result, erroneously held that Troxel compelled the reversal of the judgment of the trial court.
The judgment of the Court of Civil Appeals is reversed, and the case is remanded for an order or further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, LYONS, BROWN,
HARWOOD, and STUART, JJ., concur.
JOHNSTONE, J., concurs specially.
MOORE, C.J., and SEE, J., concur in the result.
JOHNSTONE, Justice (concurring specially).
I concur in the main opinion. I add that the respondents J.S. and E.S., the adoptive parents, do not, in the certiorari review before us, challenge the standing of the petitioners D.W. and J.C.W. to sue as "natural grandparents" within the meaning of § 26-10A-30, Ala.Code 1975, to obtain rights of visitation with the baby adopted by the respondents J.S. and E.S. Before the Court of Civil Appeals, they did unsuccessfully challenge the standing of the petitioners D.W. and J.C.W. on the ground that they are not the adoptee-baby's natural grandparents, but rather his great grandparents.
The facts are that the adoptee-baby's mother is not the biological daughter of the petitioners D.W. and J.C.W. but is, rather, their biological granddaughter, whom they adopted as their own daughter before she conceived and bore the adoptee-baby. Because the respondents do not maintain their challenge to the petitioners' standing before us, we need not consider whether the petitioners' standing is impaired by our holding that "[u]nder the facts of this case, adopting parents, whose rights are exclusively dependent upon statutory law, must be treated differently than natural parents." That is, we need not consider whether the petitioners' not being the biological parents of their adoptive daughter, who is the mother of the adoptee-baby, impairs their standing to sue as "natural grandparents" under § 26-10A-30.