199 So.2d 169

**Arthur O. HANKS**

**v.**

**Ira L. HANKS et al.**

**1 Div. 313.**

Supreme Court of Alabama.

April 13, 1967.

Rehearing Denied June 1, 1967.

Coley & Coley, Mylan R. Engel, and W. Boyd Reeves (guardian ad litem), Mobile, for appellees.

Kilborn, Darby, & Kilborn, Mobile, for appellant.

HARWOOD, Justice.

The complainant below was born Arthur McLaughlin. His mother and father separated before his birth and she returned to Mobile. Shortly thereafter his mother married a man named Cook and the complainant thereafter was known as Arthur Cook. This second marriage soon terminated and by 1926, when Arthur was six years old, his mother felt that something had to be done in reference to Arthur's rearing because of

the unwholesome surroundings in which she was living. A mutual friend brought the mother and Mr. and Mrs. Henry Hanks together and arrangements were made for the Hanks couple, Henry and Nellie, to take Arthur into their home as a boarder at $5.00 per week. This arrangement continued for some four or five years, and during this period the Hanks became attached to Arthur. One day Arthur's mother met Nellie Hanks on the street and she suggested that the mother come out the following Saturday night and have supper and the three could discuss a prospective adoption of Arthur.

According to the mother, she and Mr. and Mrs. Hanks discussed the matter, and we excerpt the following from the mother's testimony:

"A. Yes, they were supposed to raise him, take care of him, educate him and raise him as their own, and they adopted him.

"Q. Did you have that agreement with Mr. Hanks?

"A. The night—it was on a Saturday night that Mr. Hanks and Miss Nellie and I talked, and he was just as crazy about Arthur as she was.

*    *    *    *    *    *

"Q. What did Mr. Hanks say at that time?

"A. He seemed to be pleased for her to adopt him.

"Q. Did he agree to adopt him as his child?

"A. Yes, sir, he was agreeable—

*    *    *    *    *    *

"WITNESS:—because I don't think Miss Nellie would have did it if he hadn't of agreed.

*    *    *    *    *    *

"Q. And they agreed?

"A. Because I don't think she would have done it—

"Q. Did they agree or not?

"A. Yes, sir, they agreed.

"Q. Now, was there anything at all said at that time about the child not inheriting property?

"A. No sir, nothing at all.

*    *    *    *    *    *

"Q. Well, was anything said about inheritance at that time?

"A. No.

"Q. Nothing at all?

"A. No.

*    *    *    *    *    *

"Q. There was no discussion at all with Miss Nellie or Mr. Henry about inheritance or non-inheritance on that Saturday night?

"A. She said that she was going to see that he had a home—

*    *    *    *    *    *

"A. No, there was no inheritance mentioned then.

"Q. Just adoption of the child?

"A. Just the adoption.

*    *    *    *    *    *

"Q. Just that she was going to give him a home and educate him?

"A. Everything, yes, sir. She said I didn't never have to worry, he'd have everything.

"Q. That's all she ever told you, wasn't it?

"A. That's all."

It was agreed that the mother and Mrs. Hanks would meet the following Monday morning at the court house to process Arthur's adoption. They did meet, and again the mother testified that nothing was said about Arthur inheriting from either Mr. or Mrs. Hanks, "only Mrs. Hanks said she was going to do everything in her power

for that boy." The mother then signed a paper which Mrs. Hanks had already signed.

This testimony undoubtedly refers to the adoption papers filed in the Probate office of Mobile County.

The fore part of the document reads as follows:

"Nellie Margaret Hanks of the County and State aforesaid being desirous of adopting a male child named Arthur Otis Cook aged about 11 years, who is the child of J. H. and Hilda Cook, who resides in this County, only for the purpose of changing his name and of educating and maintaining him, and said child shall not inherit my Estate. Do therefore, hereby publicly declare that I have adopted, and that by these presents I do adopt the said child as aforesaid stated and I do hereby further declare that it is my desire that the said child should no longer be named and called Arthur Otis Cook but that his said name shall be changed, so that hereafter he shall bear and be known by the name of Arthur Otis Hanks."

This instrument was signed by Nellie Margaret Hanks in the presence of two witnesses, and acknowledged before the Judge of Probate.

Immediately following is a "consent to adoption" signed by Hilda Cook in the presence of the same two witnesses, in which she, as the mother of Arthur Otis Cook, consented to adoption of her child by Nellie Margaret Hanks "for the purposes above set forth."

Mrs. Cook testified that she did not read any of the document prior to placing her signature thereon.

Mrs. Hanks predeceased Mr. Hanks. There had been no administration of the estate of Mrs. Hanks as she left no estate subject to administration, and what property she left had been owned by her and Mr. Hanks jointly, with the right of survivorship.

On 21 January 1963, Mr. Hanks died, apparently intestate, leaving a number of brothers and sisters, and descendents of deceased's brothers and sisters surviving him.

Letters of administration on the estate of Mr. Hanks were issued to Ira Lee Hanks, a brother of decedent, on 4 February 1963.

Arthur Hanks then filed a claim in the Probate Court to and against the estate of Henry Hanks, deceased, this claim being based on the allegation that Arthur Hanks was entitled to the entire estate as by inheritance because of a contract by Henry Hanks for his adoption so as to make him capable of inheriting his estate; in the alternative he averred that if not entitled to the estate by inheritance then he claimed damages for breach of the contract for his adoption by Henry Hanks equal to the value of the entire estate less such expenses incurred in payment of debts and lawful charges against the estate.

Thereafter Ira Lee Hanks, as administrator, filed his inventory of the estate and simultaneously a petition to sell land and property belonging to the estate, averring that the real property cannot be equitably divided among the heirs and that it would be to the interest of the estate to sell certain personal property thereof.

Arthur Hanks had obtained from several of the nieces and nephews quit claims of their interest in the estate, though a majority of the alleged heirs of Henry Hanks had not so quit claimed. The interest that Arthur had thus obtained gave him the legal right to object to the sale of the property, and he did object.

Other heirs filed demands that the Probate Court set a hearing on Arthur's claim, and still others sought to have it stricken.

In this state of the administration, Arthur filed a petition in the Circuit Court in Equity to remove the administration of the estate to the Circuit Court and petitioned for delay of the sale until he could return from military service to defend his

claims. He also petitioned for relief by way of specific performance of the alleged contract for his adoption, or in the alternative for a declaration of the rights, duties, and status of the parties.

Thereupon the Circuit Court ordered the removal of the administration from the Probate Court to the Circuit Court of Mobile County in Equity, and assumed jurisdiction of the administration of such estate "to the end that the same may be administered in this court." The court further decreed that any proceeding to sell any of the real estate of Henry Hanks be stayed pending the release of Arthur Hanks from military service, or pending further orders of the court.

Simultaneously, in a bill filed in the Circuit Court on 25 September 1963, by Arthur Hanks, the alleged facts upon which Arthur Hanks claimed as an adopted child were set forth at length and in the prayer for relief the complainant asked that, (a) the court take jurisdiction of the cause and grant a declaration of the rights, duties, and status of the parties in the interest of each in the estate of Henry Hanks, (b) that the court decree specific performance against the estate of Henry Hanks and against the respondents of the contract for adoption and enforce the right of Arthur Hanks to take under such contract the estate he would otherwise have inherited from Henry Hanks had the contract of adoption been fully carried out so as to render Arthur Hanks capable of inheriting from Henry Hanks, (c) that the court would award the entire estate of Henry Hanks, deceased, to the complainant, subject to payment of debts and lawful charges against the estate, and, (d) if the complainant is mistaken in the relief sought by way of specific performance of the contract for adoption so as to confer the right of inheritance upon Arthur Hanks, then in the alternative it was prayed that if the court should find that the contract was fully performed by all parties except that a legal adoption carrying rights to inherit was not perfected, then that the complainant be awarded damages against the estate in such sum as the court may find will compensate Arthur Hanks for the breach of the contract for adoption. Complainant also prayed for any further and different relief to which he might be entitled.

A jury trial was demanded.

On the day of the trial the respondents filed a motion to strike the jury demand, which motion was granted and the Chancellor proceeded to try the case without the intervention of a jury.

At the conclusion of the hearing, the Chancellor entered a finding that "having considered all the testimony in the case, the court is not reasonably satisfied that Mr. Henry Huell Hanks intended that the complainant should have the right to inherit from his said estate" and further, "in view of this finding, the court does not reach any conclusion as to whether the Statute of Frauds would have been a bar to such a contract." The court then adjudged that the complainant was not entitled to the relief sought in his bill of complaint and dismissed the same.

From this decree the complainant, Arthur Hanks, perfected an appeal to this court.

Appellant's assignment of error # 8, asserts error in the action of the court in granting the motion of the appellees to strike the appellant's demand for a jury trial. We will first consider this threshold question.

Appellant argues that under the pertinent provisions of Section 164, Title 7, Code of Alabama 1940, and Section 322, Title 7, Code of Alabama 1940, the appellant was entitled to a jury trial as a matter of right.

Section 164, supra, is found in our Declaratory Judgment Law, and reads in pertinent part:

"When a proceeding under this article involves the determination of an issue

of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending."

In Reed v. Hill, 262 Ala. 662, 80 So.2d 728, it is said in reference to right to a jury trial in declaratory judgment actions:

"It may be conceded that a party to a bill seeking a declaratory judgment is entitled to a jury trial as a matter of right if he would have had such a right in the cause of action for which the declaratory relief may be considered a substitute. Tuscaloosa County v. Shamblin, 233 Ala. 6, 169 So. 234; Annotation, 13 A.L.R.2d 777.

"But in all other cases a jury trial on issues presented by a bill in equity for a declaratory judgment is permissive only. § 164, Title 7, Code 1940. See Shamblin's case, supra (syl. 3)."

Section 322, supra, in pertinent part provides:

"In all proceedings as to equity matters, as to which proceedings either party may be entitled to a trial by jury, the case may be tried by a jury summoned for that purpose, or by the regular juries for the week in which the trial is to be had * * *."

In Hill v. Lindsey, 223 Ala. 550, 137 So. 395, the appellee, claiming to be the widow of Jim Lindsey, whose estate was in the course of administration in the Probate Court, secured an order removing the same to the Circuit Court in Equity. There the administrator challenged her claim that she was such widow, and prayed for a jury to hear such issue. The jury verdict was against the widow. The Chancellor, however, was of the view that under the evidence the appellee was the widow of Lindsey and entered a decree so adjudging. In affirming the Chancellor's decree, this court wrote:

"Appellant insists the verdict of the jury was binding upon the chancellor, but this is only true in equity in those cases where a jury may be demanded as a matter of right. Karter v. East, 220 Ala. 511, 125 So. 655; Marshall v. Croom, 60 Ala. 121; section 6631, Code 1923.

"In the instant case there is no statute granting a jury trial as matter of right, and such a trial rested in the sound discretion of the chancellor. The verdict was therefore not binding upon the court, but advisory merely. Marshall v. Croom, supra; 24 Cyc. 111."

The removal of the administration of the estate in and of itself affected no property rights. It merely substituted for the Probate Court, the Circuit Court, in Equity, which had jurisdiction to determine all possible controversies, the Probate Court not possessing jurisdiction to determine equitable issues. Bynum v. Brewer, 217 Ala. 52, 114 So. 577.

When engaged in administration of an estate the Probate Court is engaged in the administration of a trust. Tillery v. Commercial National Bank of Anniston, 241 Ala. 653, 4 So.2d 125.

In Ex parte Floyd, 250 Ala. 154, 33 So. 2d 340, it is stated:

"There is no common law right to a trial by jury in the probate court, because the probate court under the aforesaid constitutional provision has general jurisdiction to administer an estate without being governed by common law procedure. 50 C.J.S. Juries, § 55; Tillery v. Commercial Nat. Bank of Anniston, supra, [241 Ala. 653, 4 So.2d 125]. To this it may be added that there appears to be no statute in this state authorizing a jury trial in the probate court to determine whether a particular person is an heir to an estate.

"When the administration is transferred to the equity court, the practice and

procedure in the equity court are observed. § 138, Title 13, Code of 1940; Tillery v. Commercial Nat. Bank of Anniston, supra; Hinson v. Naugher et al., 207 Ala. 592, 93 So. 560. The administration of an estate is a part of original equity jurisdiction because, as pointed out, the administration of the estate of a decedent is the administration of a trust. Tillery v. Commercial Nat. Bank of Anniston, supra; Little v. Burgess, 240 Ala. 552, 200 So. 566. Hence a jury trial in such a proceeding is not a matter of constitutional right. Carpenter v. First Nat. Bank of Birmingham, 236 Ala. 213, 181 So. 239; Yauger v. Taylor, 218 Ala. 235, 118 So. 271; Branyon v. Kirk, 238 Ala. 321, 191 So. 345."

▉ The above doctrines necessitate the conclusion that the court did not err in striking the appellant's demand for a jury trial.

While the appellant in his prayer in the alternative claimed damages for breach of an alleged contract to adopt, in such sum as the court may find will compensate him, these damages would be the residue of the entire estate if appellant be found to have been adopted by Henry Hanks with a right to inherit as heir of Henry. Indeed, in the claim filed in the Probate Court the appellant claimed damages equal to the entire estate.

The gravamen of the action clearly was to establish the right of the appellant in the trust property so as to determine the disposition thereof. It was essentially the administration of a trust, when a trial by jury is not allowed. See Ex parte Floyd, supra.

In a supplemental brief counsel for appellant contends that the recent case of Porter v. Alabama Farm Bureau Mut. Ins. Co., 279 Ala. 499, 187 So.2d 254, demonstrates that the court erred in denying appellant's demand for a jury trial. This case involved a jury demand in a declaratory judgment action wherein the purpose of the bill was to obtain a declaration of rights under an insurance contract as to whether the insurer would have to defend a suit against the insured under the terms of the policy. It was held that the insured was entitled to a jury trial for the reason that the bill in the declaratory action was a substitute for a breach of contract action, a proceeding in which a trial by jury was a matter of right. As before stated, we are now considering a bill which essentially involves the administration of a trust, wherein no right to a jury trial exists.

Appellant's assignment # 9 asserts that the court erred in admitting over appellant's objection the certified copy of the adoption papers signed by Mrs. Hanks, with a consent to adopt signed by the mother of appellant.

As before stated, the mother had testified as to the discussion and agreement between herself and the Hanks relative to the adoption of appellant, and of her meeting Mrs. Hanks at the court house to process the adoption. Appellant's witness, Farrow, also testified as seeing some "adoption" papers in the Hanks' home.

▉ The adoption papers were therefore explanatory of evidence introduced by the appellant, and but another fact of the transaction injected into evidence by the appellant. The court did not err in its ruling in the premises. Colvin v. State, 37 Ala.App. 268, 70 So.2d 650, affd., 260 Ala. 338, 70 So.2d 654; Maryland Casualty Co. v. Cunningham, 234 Ala. 80, 173 So. 506.

Appellant contends that the lower court erred in permitting certain of the appellee's witnesses, who were relatives and heirs of Henry Hanks, to testify relative to conversations they had had with decedent. This testimony was directed toward showing that Henry Hanks had made statements to the effect that he and his wife had done everything that Mrs. Hanks had agreed to do in reference to Arthur and that Arthur would get no part of his estate. It is appellant's contention that such testimony was inad-

missible under the provisions of Section 433, Title 7, Code of Alabama 1940, (Dead Man's Statute).

■ The present contest is between Arthur claiming as sole heir by adoption, or a contract of adoption, and those respondents who would be distributees of the estate otherwise. A holding in favor of either would not serve to increase or diminish the estate of Henry Hanks. Section 433, supra, therefore would not disqualify any of the witnesses to testify as to any transactions with or statements by the decedent. Clark v. Glenn, 249 Ala. 342, 31 So.2d 507. See also Slagle v. Halsey, 245 Ala. 198, 15 So. 2d 740.

We do not think it would serve any useful purpose to set out the evidence in detail. That of the appellant was directed toward showing that Henry Hanks had always treated Arthur as a son, that he designated him in an insurance policy as his son, and had signed a consent as the father of Arthur for him to enlist in the Coast Guard.

As we interpret the testimony of the mother of Arthur, it would appear that Henry Hanks' agreement to the adoption of Arthur was more an acquiescence in the desires of Mrs. Hanks to adopt Arthur than any direct agreement on his part to adopt Arthur. He did not go to the court house at the time Mrs. Hanks and the mother of Arthur executed the adoption papers and so far as shown by the evidence he never executed any written agreement along this line.

The appellant himself testified that in 1961, he had written and obtained a copy of the adoption papers executed by Mrs. Hanks, but that he had only glanced at these papers and had not read them carefully for about a year. This was the first time that he knew that Mrs. Hanks had not adopted him for the purpose of inheriting her property. He further testified that on his last visit to Mr. Hanks, he and Mr. Hanks had discussed the disposition of his property and Mr. Hanks had told him where everything was, and what he owned with the request that two sisters be taken care of, and that Harmon Garrick, who had spent much time in Mr. Hank's services, be taken care of.

The appellant further testified that on this occasion he had asked Mr. Hanks about a will and "He said, 'Well, he would get around to making one;' I didn't push him, it was not my job to push him." The question of adoption papers was never brought up.

■ The right of adoption, that is, to confer on the child of another a title to the privileges and rights of a child and appointment as heir of the adopting person is purely statutory, and was never recognized by the rules of common law. Abney v. DeLoach, Admr., 84 Ala. 393, 4 So. 757; Franklin v. White, 263 Ala. 223, 82 So.2d 247; Milton v. Summers, 280 Ala. 106, 190 So.2d 540.

The alleged agreement of· adoption, if any, was in June 1931, and is therefore governed by Section 9302, Chapter 326, Code of Alabama 1923. This section provides that any person desirous to adopt a child so as to make it capable of inheriting his estate, or to change the name of a child previously adopted, may make a declaration in writing, attested by two witnesses, setting forth the name, sex, and age of the child, and the name he wishes it thereafter to be known by, which being acknowledged before the Judge of Probate, filed and recorded, has the effect to make such child capable of inheriting the estate of the declarant, and of changing its name. This section, however, further provides, "But if it is desired to adopt such child only for the purpose of changing its name as above provided and of educating and maintaining such child, the declaration shall expressly state that such child shall not inherit the estate of the declarant."

The adoption ·papers processed by Mrs. Hanks did of course, expressly state that

Arthur was not to inherit her estate. No written agreement was ever executed by Henry Hanks to adopt Arthur.

Clearly there was no compliance by Henry Hanks under the statute then in effect to adopt Arthur. Equity will not enforce a mere agreement to adopt where a statute governs such proceedings, the statute in such instances being deemed mandatory and exclusive. Prince v. Prince, 188 Ala. 559, 66 So. 27; Marietta v. Faulkner, 220 Ala. 561, 126 So. 635. This appellant must therefore assert his rights, if any, in the common law of equity. Marietta v. Faulkner, supra.

The evidence presented by the appellant tends to show only that it was the understanding of some of appellant's witnesses that Henry had adopted Arthur because of remarks of Henry to the effect that he had adopted Arthur—that he was leaving his property to his son—that he treated Arthur as his child, etc.

Under our decisions such evidence, unaided by any writing evidencing an effort to comply with the adoption statute then in effect, is not sufficient to entitle the appellant to relief. Luker v. Hyde, 260 Ala. 248, 69 So.2d 421; Marietta v. Faulkner, supra.

Even so, the appellees introduced evidence tending to show that Henry had told witnesses that Arthur had given him trouble —that he and Mrs. Hanks had done "what the old lady obligated to do" and Arthur would not get what he had worked for, etc.

The Chancellor heard and saw the witnesses. Every presumption will be indulged in favor of his findings, and they will not be disturbed unless palpably wrong.

We find no basis for disturbing the decree entered below. An affirmance is in order.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.