This action stems from a declaratory judgment proceeding wherein Lumbermens Mutual Insurance Company, sought a determination of whether it had an obligation to defend in a lawsuit filed against Oxford Lumber Company and Wadley Cash and Carry.
Lumbermens Mutual issued a liability insurance policy listing both Oxford Lumber Company and Wadley Cash and Carry as the named insureds. The policy provided liability coverage in three areas: (1) personal injury and property damage; (2) limited medical payments; and (3) broad form comprehensive general liability.
The facts of the lawsuit underlying the declaratory judgment proceeding are as follows:
On May 27, 1982, Wadley Cash and Carry, owned by Oxford Lumber Company, employed one James D. Stephens, who was allegedly informed by the manager of Wadley Cash and Carry that he was covered under the company's group medical insurance policy. Relying on this statement, Stephens cancelled his previously existing medical insurance. Approximately ten days after Stephens entered employment with Cash and Carry, his wife was injured in an automobile accident. Mr. and Mrs. Stephens then learned that there was a thirty-day waiting period before the Oxford Lumber Company's group medical insurance policy with American Hardware Mutual took effect. Mr. and Mrs. Stephens sued American Hardware Mutual; Oxford Lumber Company; Wadley Cash and Carry; Pierce Stewart, the manager of Wadley Cash and Carry; and Charles and Mildred Newman, the owners of Oxford Lumber Company, claiming that the defendants were guilty of negligence, fraud, and misrepresentation.
Upon learning that it was being sued by the Stephenses, Oxford Lumber Company requested Lumbermens Mutual to defend it according to its general liability insurance policy. Lumbermens Mutual filed the declaratory judgment action made the subject of this appeal, and sought a determination *Page 975 
of whether it was required to defend Oxford Lumber. Oxford Lumber counterclaimed for breach of contract, bad faith refusal to pay, and negligent misrepresentation. The trial court severed the declaratory judgment action, to be tried in a non-jury proceeding, leaving the counterclaim to be tried at a later date. The trial court, sitting as the trier of fact, heard the declaratory judgment action in an ore tenus proceeding and found that Lumbermens Mutual was not obligated to defend Oxford Lumber Company. Oxford Lumber Company appeals here, raising two issues for our review:
(1) Whether it was entitled to a jury trial; and, (2) Whether the insurer was under a duty to defend.
 I
Oxford Lumber Company first contends that it was entitled to a jury trial to determine all of the issues raised in Lumbermens Mutual's complaint for declaratory judgment. We disagree.
The general rule is stated in Ex parte Rush, 419 So.2d 1388
(Ala. 1982), in which the dispositive issue was whether the trial judge erred in granting plaintiff's motion to strike defendant's request for a jury trial. In Rush, the Court opined as follows, at 1389-90:
 "`[A] party to a bill seeking a declaratory judgment is entitled to a jury trial as a matter of right if he would have had such a right in the cause of action for which the declaratory relief may be considered a substitute. Tuscaloosa County v. Shamblin, 233 Ala. 6, 169 So. 234; Annotation, 13 A.L.R.2d 777.
 "Reed v. Hill, 262 Ala. 662 at 663, 80 So.2d 728 at 729 (1955); quoted with approval in Sherer v. Burton, 393 So.2d 991 (Ala. 1981), and Hanks v. Hanks, 281 Ala. 92, 199 So.2d 169 (1967). The same principle is recognized in Code 1975, § 6-6-228, part of Alabama's version of the Uniform Declaratory Judgment Act:
 "`When a proceeding under this article involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending."
This Court then proceeded to hold as follows:
 "The cause underlying plaintiff's declaratory judgment action is a contract dispute with attendant issues which would be triable in a common law action. Porter v. Alabama Farm Bureau Mutual Casualty Insurance Company, 279 Ala. 499, 187 So.2d 254
(1966); Major v. Standard Accident Insurance Company, 272 Ala. 22, 128 So.2d 105 (1961). . . . [Emphasis added.]
". . .
 ". . . In the instant case, the trial court should not have removed the case from the jury absent a finding, arrived at through the procedure for summary judgment contained in Rule 56, [A.R.Civ.P.,] that no issues of material fact existed. Thus far, no such finding has been made. Therefore, the trial court erred in striking defendant's request for a jury trial."
In support of this view, Oxford Lumber also cites Porter v.Alabama Farm Bureau Mutual Casualty Insurance Co., 279 Ala. 499, 187 So.2d 254 (1966), and Major v. Standard Accident Ins.Co., 272 Ala. 22, 128 So.2d 105 (1961).
In Porter, the insurer claimed that the insurance policy was not in effect because the insured had not given proper notice to the insurer. This created a factual issue of proper notice under the policy involved in that case. 279 Ala. at 506,187 So.2d at 260. In the present case there is no factual issue of notice under the policy.
In Major, a factual issue was present concerning ownership of the automobile which was driven by the insured. In Major, a determination of this issue was based at least in part on fact determinations. 272 Ala. at 24, 128 So.2d at 107. In the present case there is no dispute as to ownership.
Any factual issues in the Oxford Lumber Company counterclaim which was severed *Page 976 
are still entitled to be tried by a jury. In its brief, Lumbermens admits this fact.
We agree with the trial judge that there were no issues of fact to be determined in this declaratory judgment proceeding and that it should have been a non-jury case. Oxford Lumber Company's answer filed in response to the initial declaratory judgment complaint admits that the insurance policy was in full force and effect at all relevant times. The only issue in the declaratory judgment proceeding was one of construction of the insurance policy which was in effect between the parties.
In Cohorst v. United States Steel Corp., 439 So.2d 23 (Ala. 1983), the trial court granted a summary judgment in a contract action, and the losing party appealed. This Court held, at 25:
 "Although [the appellant] contends that this determination involved the resolution of disputed factual issues outside the province of summary judgment procedure, we have consistently held that the court, not the jury, must first ascertain whether a contract is ambiguous and then must determine the meaning of the contract when its terms are clear and certain. C.F. Halstead Contractor, Inc. v. Dirt, Inc., 294 Ala. 644, 649, 320 So.2d 657, 661
(1975) (on denial of application for rehearing) (citing Air Conditioning Engineers, Inc. v. Small, 259 Ala. 171, 176, 65 So.2d 698, 703
(1953))."
Thus, in accordance with the longstanding rule that interpretation of a contract is a matter to be resolved by the court as a matter of law, we conclude that the trial court did not err in failing to present this issue to the jury, since here, there were no attendant issues which would be triable in a common law action.
 II
Secondly, appellant contends that Lumbermens had a contractual obligation to defend Oxford Lumber Company against third-party lawsuits, based on the provisions of the policy dealing with property damage and personal injury.
Oxford Lumber Company argues in support of this contention, as follows:
Pierce Stewart, manager of Wadley Cash and Carry, is an agent of Oxford Lumber. The Stephenses claim that as a result of Stewart's negligence, they suffered a loss to their property interests and that as a consequence, they suffered mental upset and anguish which caused bodily harm or injury. The Stephenses claim that the property damage they suffered was the loss of an insurance policy. Thus, Oxford Lumber contends, since Lumbermens insured it against property damage and personal injury, and because the Stephenses claim property damage and personal injury against Oxford Lumber Company, then, under the terms of the policy, Lumbermens Mutual should defend Oxford Lumber Company. We disagree.
The trial court made the following statement:
 "[T]here would be coverage if any possible theory stated in the Stephens complaint is a claim which is insured under the present policy, and for the purpose of the present proceeding the Stephens complaint is to be construed so as to provide such coverage, if any such possible claim is stated. Looking at the Stephens complaint in this light, Stephens claims that Wadley Cash and Carry was negligent in failing to provide medical insurance, or, in the alternative, made a negligent misrepresentation of the fact on which Stephens relied, to his detriment. Thus, the claims are for negligence or statutory fraud."
The insuring clause of the policy indicates that the policy provides coverage for "damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence." The policy defines "personal injury" to mean the following:
 "[I]njury arising out of one or more of the following offenses committed during the policy period: (1) False arrest, detention, imprisonment, or malicious prosecution; (2) Wrongful entry or eviction or other invasion of the right of private *Page 977 
occupancy; (3) A publication or utterance . . . of a libel or slander. . . ."
None of the Stephenses' causes of action are included in this definition.
The policy defines "property damage" to mean the following:
 "(1) [P]hysical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."
Again, this definition does not cover the type of loss claimed by the Stephenses.
In addition, Oxford Lumber contends that the policy, containing large headings such as "Special Multi-peril" and "Broad Form Comprehensive General Liability," would lead an ordinary person into believing that the policy provided liability insurance in this particular situation. Again, we must disagree.
As the trial court held, an ambiguity cannot be created merely by use of words in a broad general title when the terms "personal injury" and "property damage" are specifically defined in the policy. Thus, because there is no ambiguity, even when the policy is most strictly construed against the insurer, there is no coverage under the policy provisions dealing with "property damage" and "personal injury."
Finally, Oxford Lumber contends that Lumbermens Mutual had an obligation to defend Oxford Lumber against third-party lawsuits under the products liability provisions of the policy. In its brief, Oxford Lumber argues as follows:
 "The underlying lawsuit filed by Mr. and Mrs. Stephens against Oxford Lumber Company alleged, among other things, that Oxford Lumber Company had acted as insurance agents for American Hardware, the group medical carrier, and had delivered a defective product to Mr. and Mrs. Stephens, to-wit, an insurance policy which was defective in that it failed to cover its holders in an expected and adequate manner, and a claim that Oxford Lumber Company handled this `product' in a negligent manner.
 "Under the terms of the policy issued by Lumbermens to Oxford Lumber Company, provisions were made to include products liability type coverage. Under the `Special Multi Peril' Policy, Section II deals with Liability Coverage. Under the subsection schedule entitled General Liability Hazards Section 4 covers `Products.' The amount of the premium base of Oxford Lumber Company is set out therein. The pertinent explanation and definitions of liability coverage applicable to Section II and in particular to `Products' as set out therein [are] as follows:
 "`named insured's products' means goods or products manufactured, sold, handled, or distributed by the named insured or others trading under his name . . ."
 "`products hazard' include[s] bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured. . . ."
 "Therefore, based on the terms of the policy, Lumbermens is required to defend, and if unsuccessful to pay any judgment incurred by Oxford Lumber Company against third parties because of a defective product stemming from Oxford Lumber Company. Oxford Lumber Company's products are not necessarily limited to lumber, nails, and the like. The product can be an insurance policy that is issued by an insurer (such as American Hardware) and distributed or implemented by a business such as Oxford Lumber Company for the benefit of its employees. Oxford Lumber Company can be deemed to be an implied agent of the insurer and liable for representations or omissions that it makes *Page 978 
concerning the insurance policy. The defective product in this case is an insurance policy that is not immediately activated and therefore invalid for 30 days. A representation by Oxford Lumber Company (specifically Pierce Stewart) to . . . Stephens that the policy is effective immediately or a failure to warn of the 30 day waiting period is the equivalent of disbursing [sic] a defective product."
Although we give credit to appellant's counsel for his creativeness, we find this prodigious argument to be totally without merit. For purposes of the Alabama Extended Manufacturer's Liability Doctrine, the issuance of an insurance contract is a service and not the sale of a product.
We find no reversible error; the judgment of the trial court is, therefore, due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.