Nestor W. Flodin and five other owners of units in the Williamsburg Square condominium development are plaintiffs in a declaratory-judgment action filed April 19, 2000, against Community Health Systems, Inc., and Community Senior Life, Inc., as defendants, in the Circuit Court of Baldwin County. They petition this Court for a writ of mandamus directing Baldwin County Circuit Judge James H. Reid to vacate his order setting The trial of the case on the trial courts nonjury docket. The petition for the writ of mandamus is denied.
This Court has held that IT [a] petition for a writ of mandamus is the appropriate method of challenging a trial courts denial of a demand for trial by jury." Ex Parte Jackson, 737 So.2d 452, 453 (Ala. 1999) (citing *Page 373 
Ex Parte Holt, 599 So.2d 12 (Ala. 1992)). This Court has also stated:
 "A writ of mandamus is an extraordinary remedy, and it will be "issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court. Ex Parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala. 1993). A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal. Ex parte Drill Parts Serv. Co., 590 So.2d 252 (Ala. 1991). It is well settled that "a writ of mandamus will not issue to review the merits of an order denying a motion for a summary judgment. Ex parte Central Bank of the South, 675 So.2d 403, 406 (Ala. 1996)
Ex parte Empire Fire Marine Ins. Co., 720 So.2d 893, 894 (Ala. 1998)
In September 1994, each of the plaintiffs entered into a "condominium agreement" with Neil Liechty, Inc., the developer of the Williamsburg Square development; that agreement stated, in pertinent part:
"ARTICLE ONE
"DEFINITIONS
 "Section 1. "DEVELOPER' shall mean NEIL LIECHTY, INC., its successors and assigns.
 "Section 2. "PURCHASER' shall mean and refer to the PURCHASER of a unit in WILLIAMSBURG SQUARE, A CONDOMINIUM, but excluding specifically those having such interest merely as security for the performance of an obligation, such as a mortgagee.
 "Section 3. "HOMESTEAD OF FAIRHOPE' is a Lifetime Care Community Development located in Baldwin County, Alabama, and consisting of Apartments, assisted living facilities, a conference center, restaurant, bed and breakfast facility, barber shop and beauty salon, delicatessen and gift shop, certain recreational facilities such as a pool, and certain services to the public. "Section 4. "UNIT' is a unit in WILLIAMSBURG SQUARE, A CONDOMINIUM.
"ARTICLE TWO
"DEVELOPER RIGHTS
". . . .
 "HOMESTEAD OF FAIRHOPE is a private business whose owner, employees, officers, directors, partners, members, tenants, customers, guests, or invitees may or may not be owners within WILLIAMSBURG SQUARE, A CONDOMINIUM. HOMESTEAD OF FAIRHOPE may or may not be used by the general public. No PURCHASER or occupant of a UNIT in WILLIAMSBURG SQUARE, A CONDOMINIUM gains any right of membership or right to enter or use the property or facilities of HOMESTEAD OF FAIRHOPE because of ownership or occupancy of a UNIT within WILLIAMSBURG SQUARE, A CONDOMINIUM.
 "No representations or warranties have been or are made by the DEVELOPER or any other person or entity with regard to the continuing ownership or operation of HOMESTEAD OF FAIRHOPE as same presently exists, and no such representation or warranty shall ever be effective without a written amendment to this AGREEMENT executed or joined into by the DEVELOPER. The ownership, operation, use or management of HOMESTEAD OF FAIRHOPE may change at any time, *Page 374 
 solely at the discretion of DEVELOPER, or its successors or assigns.
 "Subject to the terms of this Agreement, PURCHASER may receive from HOMESTEAD OF FAIRHOPE the following services and/or availability of services:
"Lap Swimming Pool
"Membership in Seniors' Fitness Center
"Exercise Equipment "Sauna "Whirlpool
"Availability of Van Transportation
"Participation in Community Activities
"Discount in the Grand Victorian
 "Availability of the Victorian Courtyard for private parties
"Participation in Homestead Special Events
"Meal Plan Available
"Monthly Cleaning
"Outside Maintenance of Building and Lawn
"Windows Washed Semi-Annually
"Exterior of Condo Washed Annually
"Carpets Shampooed Annually
"24-Hour Emergency Nursing Available
"Burglar/Fire Alarm Security System
"Cable TV Connection
"Priority Availability into Retirement Center
 "Free Move from Condominium to Retirement Center when required
"ARTICLE THREE
"RIGHTS TO USE OF FACILITIES BY PURCHASER
 "Section 1. Right of PURCHASER to use of facilities. Subject to the terms and conditions of Article Two, supra, every PURCHASER, after acquiring fee simple title to a UNIT in WILLIAMSBURG SQUARE, A CONDOMINIUM and becoming record title owner of said UNIT, shall have a limited right to use and enjoyment in and to any common area within HOMESTEAD OF FAIRHOPE together with the limited right to use of all recreational, security, services and convenience facilities located on or provided by the HOMESTEAD OF FAIRHOPE together with the right to participate in any scheduled activities of the facility, subject to, however:
 "(a) The right of the DEVELOPER or HOMESTEAD OF FAIRHOPE to charge a monthly fee for those facilities and services described as standard, which fee may not be increased by more than five percent (5%) per year. The services will be defined from time to time by the DEVELOPER by separate writing and when delivered to the PURCHASER shall become a part and parcel of the obligations undertaken by DEVELOPER by this writing;
 "(b) The right of DEVELOPER or HOMESTEAD OF FAIRHOPE to suspend the rights to use of the facilities and services described in Article Two and Three, supra [sic], for the reasons and upon the conditions stated in said articles, including but not limited to non-payment of fees and to create liens against the land and a personal obligation against the PURCHASER for the same.
"ARTICLE FOUR
"COVENANT TO PAY FEES
 "Section 1. Creation of a lien and personal obligation. Each PURCHASER of any UNIT, by acceptance of a deed therefor, whether or not it shall be *Page 375 
 so expressed in such deed, is deemed to covenant and agree to pay DEVELOPER the monthly fee for use of the recreational, security, service and convenience facilities of HOMESTEAD OF FAIRHOPE and to participate in any scheduled activities. PURCHASER further covenants to pay for any special services provided by DEVELOPER according to the fee schedule adopted by DEVELOPER from time to time.
 "Such charges, together with interest at the legal rate, costs and attorney's fees shall be a charge on the UNIT and be a continuing lien on the UNIT purchased by PURCHASER in WILLIAMSBURG SQUARE, A CONDOMINIUM which may be enforced in the same manner as a mechanic's and/or materialman's lien for fees. Such charges shall also be the personal obligation of the PURCHASER during the time such charges are accumulating.
"ARTICLE FIVE
"GENERAL PROVISIONS
 "Section 1. Enforcement. The DEVELOPER or any PURCHASER shall have the right to enforce, by any proceeding at law or equity, conditions, covenants, liens or charges now or hereafter imposed by the provisions of this AGREEMENT. Failure by either the DEVELOPER or any PURCHASER to enforce any covenants or conditions herein contained shall in no event be deemed a waiver of the right to do so thereafter.
 "Section 4. Assignment of AGREEMENT This AGREEMENT shall be binding on the respective heirs, executors, administrators, successors and assigns. Except as provided herein, this AGREEMENT may not be assigned by the PURCHASER without the prior written consent of the DEVELOPER. This AGREEMENT may be assigned by the DEVELOPER without the prior written consent of the PURCHASER. The conditions, covenants, liens, or charges provided for in this AGREEMENT shall be an equitable servitude on the UNIT in WILLIAMSBURG SQUARE, A CONDOMINIUM and shall run with the UNIT in WILLIAMSBURG SQUARE, A CONDOMINIUM."
The plaintiffs state that in 1995, Neil Liechty, Inc., began to fail to provide the services promised in the condominium agreement. They also state that they came to believe that they could obtain the services promised in their agreements for less than the $250 per month that Neil Liechty, Inc., charged. The plaintiffs allege that they attempted to have Neil Liechty, Inc., comply with the agreements and deliver the promised services, but that these attempts proved unsuccessful. Thereafter, the Williamsburg Square property owners' association sent a letter on February 14, 1996, terminating the condominium agreements. The plaintiffs further say that each resident individually reaffirmed with Neil Liechty, Inc., on or about April 5, 1996, the termination of his or her agreement.
In a subsequent unrelated lawsuit, David Dukes was appointed receiver for Homestead Village of Fairhope; no receiver was appointed for Neil Liechty, Inc.[1] On *Page 376 
October 27, 1999, Homestead Village of Fairhope, through David Dukes as its receiver, and Community Health Systems, Inc., entered into an agreement of purchase, pursuant to which Community Health Systems, Inc., purchased Homestead Village.[2] The plaintiffs allege that that agreement contained no assignment of the duties contained in their agreements with Neil Liechty, Inc., and that no such assignment of the rights and responsibilities of Neil Liechty, Inc., under the condominium agreements ever took place.[3] The plaintiffs state that following the sale they "have received bills from Community Senior Life, Inc., purporting to charge $250.00 per month as a "maintenance fee' [and they have] refused to pay said bills."
The April 19, 2000, complaint filed by the plaintiffs sought a judgment declaring that Community Health Systems, Inc., and Community Senior Life, Inc. (hereinafter jointly referred to as "the defendants"), have no right to collect a monthly fee for the services described in the plaintiffs' respective condominium agreements with Neil Liechty, Inc.[4]
The plaintiffs requested a jury trial.
In their petition for the writ of mandamus, the plaintiffs make no mention of, and fail to attach, the answer filed by the defendants, but they have attached the defendants' amended answer containing a counterclaim that was filed on January 5, 2001. The plaintiffs filed a motion to strike the counterclaim on January 16, 2001, that the trial court has not ruled on. On February 6, 2001 the plaintiffs filed a motion for a summary judgment. The defendants filed a motion to strike the plaintiffs' jury demand on February 8, 2001, and on February 15, 2001, they filed a motion in opposition to the plaintiffs' summary-judgment motion. The plaintiffs state in their petition that the trial court heard argument on the defendants' motion to strike the jury demand on more than one occasion. The plaintiffs' petition, however, does not contain any materials showing the substance of such arguments. The plaintiffs state that although the trial court did not explicitly grant the defendants' motion to strike the jury demand, it transferred the case to its nonjury docket on April 30, 2001. On June 3, 2001, the plaintiffs filed an answer to the defendants' amended answer and counterclaim that requested a jury trial on the counterclaim asserted by the defendants.[5]
The plantiffs allege that the trial court erred in transferring this case to its nonjury docket because, they say, their complaint raises issues of fact, and their complaint, while seeking declaratory relief, *Page 377 
could otherwise have been brought as a breach-of-contract action. They rely on this Court's holding that a "party to a bill seeking a declaratory judgment is entitled to a jury trial as a matter of right if he would have had such a right in the cause of action for which the declaratory relief may be considered a substitute." Sherer v. Burton,393 So.2d 991, 991 (Ala. 1981) (citing Hanks v. Hanks, 281 Ala. 92, 97,199 So.2d 169, 173 (1967); Reed v. Hill, 262 Ala. 662, 663, 80 So.2d 728,729 (1955); and § 6-6-228, Ala. Code 1975)
To determine whether the plaintiffs are entitled to a writ of mandamus, the main question to be resolved is the underlying nature of the plaintiffs' action. As the Court of Civil Appeals has aptly stated:
 "With the adoption of the Alabama Rules of Civil Procedure, the common law forms of action at law and in equity were abolished. Actions and defenses of a legal and equitable nature may now be joined and intermingled in the one form of "Civil Action. Rule 2, [Ala. R. Civ. P.] Thus the right to trial by jury is not now determined by the common law form of action but by the issues presented by the pleadings in the "Civil Action." This is made clear by the phrasing of the following partial quote from Subsection (b) of Rule 38: "Any party may demand a trial by jury of any issue triable of right by a jury. . . .'"
Poston v. Gaddis, 335 So.2d 165, 167 (Ala.Civ.App. 1976), cert. denied, 335 So.2d 169 (Ala. 1976)
The plaintiffs characterize the underlying nature of their action as breach of contract; the defendants characterize it as presenting purely the legal question whether certain covenants in the original condominium agreements between the plaintiffs and Neil Liechty, Inc., created equitable servitudes on each condominium unit, which could be assigned. The defendants cite cases decided by this Court to support their argument that the issue presented by the plaintiffs is a question of law, such as Oxford Lumber Co. v. Lumbermens Mutual Insurance Co., 472 So.2d 973, 976
(Ala. 1935), in which this Court stated:
 "We agree with the trial judge that there were no issues of fact to be determined in this declaratory judgment proceeding and that it should have been a non-jury case. . . . The only issue in the declaratory judgment proceeding was one of construction of the insurance policy which was in effect between the parties.
 "In Cohorst v. United States Steel Coro., 439 So.2d 23
(Ala. 1933), the trial court granted a summary judgment in a contract action, and the losing party appealed. This Court held, at 25:
 "`Although [the appellant] contends that this determination involved the resolution of disputed factual issues outside the province of summary judgment procedure, we have consistently held that the court, not the jury, must first ascertain whether a contract is ambiguous and then must determine the meaning of the contract when its terms are clear and certain. C.F. Halstead Contractor, Inc. v. Dirt, Inc., 294 Ala. 644, 649, 320 So.2d 657, 661 (1975) (on denial of application for rehearing) (citing Air Conditioning Enqineers, Inc. v. Small, 259 Ala. 171, 176, 65 So.2d 698, 703 (1953))
 "Thus, in accordance with the long-standing rule that interpretation of a contract is a matter to be resolved by the court as a matter of law, we conclude that the trial court did not err in failing to present this issue to the jury, since here, there were no attendant issues *Page 378 
which could be triable in a common law action."
The defendants argue that the pleadings do not show that the plaintiffs' action could otherwise be brought as a breach-of-contract action. In the complaint, after a statement of the factual bases, the plaintiffs request the following relief:
 "WHEREFORE, after all due proceedings, Plaintiffs request this Honorable Court:
"A. Declare that any agreement between Neil Liechty, Inc. [,] and Plaintiffs herein has been terminated and is null, void, and of no further force or effect.
"B. Declare that Community Health Systems, Inc. [,] and/or Community Senior Life, Inc. [,] has no right, basis or ability to charge for or collect any sums of money from Plaintiffs; and
 "C. For all other just, general and equitable relief as is proper including attorneys fees."
The plaintiffs do not seek a declaration that either Neil Liechty, Inc., who is not a defendant in this action, or the named defendants breached the condominium agreements. They request only that the trial court declare that the agreements were terminated by the notices of termination undisputedly given on February 14 and April 5, 1996, and that the defendants have no right to collect the $250 per month fee.
The plaintiffs argue that we should consider their motion for a summary judgment as a pleading and look to it for additional support for their contention that the nature of this action is a breach of contract. A motion for a summary judgment is not a "pleading." "Pleadings" are distinguished from "motions and other papers" in Rule 7, Ala. R. Civ. P., which states:
 "(a) Pleadings. There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complain:, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a thirdparty answer.
"(b) Motions and Other Papers.
 "(1) An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.
 "(2) The rules applicable to captions, signing and other matters of form of pleadings apply to all motions and other papers provided for by these rules.
 "(3) All motions shall be signed in accordance with Rule 11."
The plaintiffs have failed to show that this action could otherwise be brought as a breach-of-contract action against these named defendants or that genuine issues of material fact exist as to whether the plaintiffs took actions to terminate their condominium agreements. The question is whether the plaintiffs legally terminated their agreements. Moreover, they have failed to attach "copies of any order or opinion or parts of the record that would be essential to an understanding of the matters set forth in the petition." See Rule 21 (a), Ala. R. App. P. In sum, they have failed to show that they have a clear legal right to have this action placed back on the trial court's jury docket. See Ex *Page 379 
parte Empire Fire Marine Ins. Co., supra. Therefore, the petition for the writ of mandamus is denied.
PETITION DENIED.
Moore, C.J., and See, Brown, and Stuart, JJ., concur.
[1] Neil Liechty, Inc., developed and operated Homestead Village of Fairhope until Dukes was named receiver. The defendants state in their response to this Court that "[a] s a result of the settlement of litigation filed by the Receiver against Liechty [The Homestead Garden Apartments of Fairhope, Limited v. Neil Liechtv, Inc., Case No. CV-96-804], Liechty forfeited to the Receiver all of his right, title or interest in Homestead."
[2] Before the sale, Dukes, on behalf of Homestead Village of Fairhope, sued the plaintiffs for their refusing to pay the monthly fee. That lawsuit was settled on February 21, 2000, through the execution of a document entitled "Confidential Mutual Release and Settlement Agreement."
[3] The plaintiffs' petition does not contain a copy of the agreement of purchase between Homestead Village of Fairhope and Community Health Systems, Inc.
[4] 0n December 20, 2000, the owners of the four remaining condominium units in Williamsburg Square filed a motion to intervene in this lawsuit as defendants.
[5] The issue whether the trial court erred by placing the defendants' counterclaim on its nonjury docket is not properly before us because a jury demand on the counterclaim was not made by the plaintiffs until after the court had transferred the cause to its nonjury docket. The plaintiffs have submitted no ruling by the trial court on their jury demand on the defendants' counterclaim. Therefore, at the time the case was transferred, the only jury demand was contained in the plaintiffs' complaint.