PARKER, Justice
(concurring specially).
It is well settled in Alabama that adoption is a purely statutory right. “In Alabama, the right of adoption is purely statutory and in derogation of the common law, ... and unless the statute by express provision or necessary implication confers the right of adoption, such right does not exist.” Evans v. Rosser, 280 Ala. 163, 164-65, 190 So.2d 716, 717 (1966) (citing Doby v. Carroll, 274 Ala. 273, 147 So.2d 803 (1962)). In Hanks v. Hanks, 281 Ala. 92, 99, 199 So.2d 169, 176 (1967), this Court similarly stated:
“The right of adoption, that is, to confer on the child of another a title to the privileges and rights of a child and appointment as heir of the adopting person is purely statutory, and was never recognized by the rules of common law. Abney v. DeLoach, Admr., 84 Ala. 393, 4 So. 757 [(1888)]; Franklin v. White, 263 Ala. 223, 82 So.2d 247 [(1955)]; Milton v. Summers, 280 Ala. 106, 190 So.2d 540 [(1966)].”
Alabama has unequivocally held that adoption is a purely statutory right; an Alabamian’s right to adopt does not exist apart from Alabama’s positive law. Thus, adoption is a privilege, not a right.[11]
Stating explicitly what is implicit in the above caselaw: there is no fundamental right to adopt. Instead, as set forth above, “adoption is a status created by the state acting as parens patriae, the sovereign parent.”[12] Douglas v. Harrelson, 454 So.2d 984, 986 (Ala.Civ.App.1984) (citing Ex parte Bronstein, 434 So.2d 780 (Ala.1983)). Of course, having created the purely statutory right of adoption, the State has the authority to specify the contours of that light,[13] which it has done in *1115 the Alabama Adoption Code, Ala.Code 1975, § 26-10A-1 et seq. In Ex parte Sullivan, 407 So.2d 559, 562-63 (Ala.1981), this Court stated:
“Adoption is purely statutory. It was unknown to the common law. The courts of this state have always required strict adherence to statutory requirements in adoption proceedings. No case has stated this principle better than the Court of Civil Appeals in Davis v. Turner, 337 So.2d 355 (Ala.Civ.App.1976), where it said:
“ ‘Adoption is strictly statutory, Hanks v. Hanks, 281 Ala. 92, 199 So.2d 169 [(1967)]. Being unknown at common law, it cannot be achieved by contract, Prince v. Prince, 194 Ala. 455, 69 So. 906 [(1915)]. Adoption is not merely an arrangement between the natural and adoptive parents, but is a status created by the state acting as parens patriae, the sovereign parent. Because the exercise of sovereign power involved in adoption curtails the fundamental parental rights of the natural parent, the adoption statutes must be closely adhered to.’
“337 So.2d at 360-361.”
Among other things, the State, acting as parens patriae, has the authority to determine who may adopt based on the best interest of the child to be adopted. To this end, the United States Court of Appeals for the Eleventh Circuit has held that a state has a legitimate interest in encouraging a stable and nurturing environment for an adopted child by encouraging that the child be raised in the optimal family structure with both a father and a mother:
“Florida clearly has a legitimate interest in encouraging a stable and nurturing environment for the education and socialization of its adopted children. See, e.g., Palmore v. Sidoti, 466 U.S. 429, 433, 104 S.Ct. 1879, 1882, 80 L.Ed.2d 421 (1984) (‘The State, of course, has a duty of the highest order to protect the interests of minor children, particularly those of tender years.’); Stanley [v. Illinois], 405 U.S. [645,] 652, 92 S.Ct. [1208,] 1213 [(1972)] (noting that ‘protect[ing] the moral, emotional, mental, and physical welfare of the minor’ is a ‘legitimate interest ], well within the power of the State to implement’) (internal quotation marks omitted). It is chiefly from parental figures that children learn about the world and their place in it, and the formative influence of parents extends well beyond the years spent under their roof, shaping their children’s psychology, character, and personality for years to come. In time, children grow up to become full members of society, which they in turn influence, whether for good or ill. The adage that ‘the hand that rocks the cradle rules the world’ hardly overstates the ripple effect that parents have on the public good by virtue of their role in raising their children. It is hard to conceive an interest more legitimate and more paramount for the state than promoting an optimal social structure for educating, socializing, and preparing its future citizens to become productive participants in civil society— particularly when those future citizens are displaced children for whom the state is standing in loco parentis.
“More importantly for present purposes, the state has a legitimate interest in encouraging this optimal family structure by seeking to place adoptive children in homes that have both a mother and father. Florida argues that its preference for adoptive marital families is based on the premise that the marital family structure is more stable than other household arrangements and that *1116 children benefit from the presence of both a father and mother in the home. Given that appellants have offered no competent evidence to the contrary, we find this premise to be one of those ‘improvable assumptions’ that nevertheless can provide a legitimate basis for legislative action. Paris Adult Theatre 1 v. Slaton, 413 U.S. 49, 62-63, 93 S.Ct. 2628, 2638, 37 L.Ed.2d 446 (1973). Although social theorists from Plato to Simone de Beauvoir have proposed alternative child-rearing arrangements, none has proven as enduring as the marital family structure, nor has the accumulated wisdom of several millennia of human experience discovered a superior model. See, e.g., Plato, The Republic, Bk. V, 459d-461e; Simone de Beauvoir, The Second Sex (H.M. Parshley trans., Vintage Books 1989) (1949). Against this ‘sum of experience,’ it is rational for Florida to conclude that it is in the best interests of adoptive children, many of whom come from troubled and unstable backgrounds, to be placed in a home anchored by both a father and a mother. Paris Adult Theatre I, 413 U.S. at 63, 93 S.Ct. at 2638.”
Lofton v. Secretary of Dep’t of Children & Family Servs., 368 F.3d 804, 819-20 (11th Cir.2004).
In summary, adoption is a purely statutory right created by the State acting as parens patriae; there exists no fundamental right to adopt a child. Acting in the role of parens patriae, the State has a legitimate interest in encouraging that children be adopted into the optimal family structure, i.e., one with both a father and a mother.

. In Alabama, we have consistently referred to the statutory "right of adoption.” It must be stressed that adoption is a statutory right, not a natural or fundamental right:
"While adoption has often been referred to in the context of a 'right' of adoption, the right to adopt is not absolute, and ... such ‘right’ is not a natural or fundamental one but rather a right created by statute. Furthermore, adoption statutes confer a privilege rather than a right; that is, adoption is not a right, but a privilege which is governed not by the wishes of the prospective parents but by the state’s determination that a child is best served by a particular disposition. Similarly stated, adoption is not a fundamental right but is rather a creature of statute. Adoption has sometimes been characterized as a 'status' created by the state, and an 'opportunity,' rather than a right, to adopt has been said to be a legislatively created device.”
2 Am.Jur.2d Adoption § 6 (2004)(footnotes omitted).

. Of course, the State may act as parens patriae only as to children who actually need rescuing. In my special concurrence to Ex parte E.R.G., 73 So.3d 634 (Ala.2011), I stated that a parent has a fundamental right to parent his or her children that is disturbed only " "‘in those extreme instances where the state takes over to rescue the child from parental neglect or to save its life.” ’ ” 73 So.3d at 655 (quoting R.J.D. v. Vaughan Clinic, P.C., 572 So.2d 1225, 1228 (Ala.1990), quoting in turn 59 Am.Jur.2d Parent and Child § 48 at 194 (1987)). Only once a child has been determined to be "dependent” does the State have any jurisdiction to intrude into the "separate and legitimate human government” that is the family. 73 So.3d at 650.

.See Stevenson v. King, 243 Ala. 551, 553, 10 So.2d 825, 826 (1942)(recognizing that the purely statutory right of mortgage redemption, which did not exist at common law but was created by the positive law of Alabama, "must be exercised by the person and in the mode and manner prescribed by the statute” and that “[i]t [is] entirely within the competency of the Legislature to determine the conditions upon which the right could be granted”).